SYKES, Circuit Judge.
Mersaides McCauley was shot and killed by her ex-boyfriend Glenford Martinez as she left the parking lot of her church in Chicago. Martinez then turned the gun on himself. At the time of the murder-suicide, Martinez was on parole for an earlier homicide and had a history of harassing and assaulting McCauley in violation of his parole and a court order of protection issued on her behalf. Chicago law-enforcement and Illinois corrections officials were aware of these violations and could have ensured that Martinez was detained without bail, but they neither issued a parole-violation warrant nor arrested him for violating the order of protection.
After Mersaides’s death, her father, Brewster McCauley, as administrator of her estate, filed suit in state court against the City of Chicago and several of its officials, the Illinois Department of Corrections (“IDOC”) and its director, and Martinez’s estate. The complaint alleged 13 separate federal and state claims for relief; those relevant here are equal-protection claims against the City of Chicago and the IDOC director.
The city and state defendants removed the case to federal court and promptly moved to dismiss. The district court granted the motion. The court held that female victims of domestic violence are not a “suspect” or “protected” class for purposes of equal-protection analysis, so McCauley’s equal-protection claim against the City failed as a matter of law. The court also held that McCauley’s claim against the IDOC director was barred by the Eleventh Amendment because the claim sought damages from the director in his official capacity. McCauley asked for leave to conduct limited discovery in the hope of finding a basis for a personal-capacity equal-protection claim against the IDOC director. The district court denied this request. McCauley appealed.
We affirm, although on different grounds. The complaint does not plausibly state a policy-or-practice equal-protection claim against the City. It contains only generalized allegations that the City failed to have specific policies in effect to protect victims of domestic violence from harm inflicted by those who violate their parole or court orders of protection by committing acts of domestic violence. The complaint alleges, in essence, that the City failed to single out domestic-violence victims as a class for special protection, not that the City denied this class of victims equal protection.
McCauley does not contest the dismissal of his equal-protection claim against the IDOC director in his official capacity, but he does seek review of the court’s denial of his request for limited discovery for the purpose of finding a basis for a personal-capacity claim. At oral argument, however, McCauley’s counsel admitted he had no reason to believe the IDOC director had any personal involvement in supervising Martinez’s parole, let alone any of the events leading to Mersaides’s death. Accordingly, the district court properly de *614 nied the request for Rule 12(b)(6) discovery.
I. Background
In 1993 Martinez was convicted of murder and attempted murder and sentenced to 28 years in prison. He was released in 2006 and placed on mandatory supervised release for three years. In November 2007 Martinez was arrested and charged with domestic battery for allegedly choking Mersaides McCauley, his former girlfriend, until she lost consciousness. Two days later an Illinois state court entered an emergency order of protection against Martinez on behalf of Mersaides. Later that month the court issued a plenary order of protection. Both orders prohibited Martinez from having any contact with Mersaides.
On two separate occasions, the Cook County State’s Attorney’s Office informed Martinez’s parole officer at IDOC of the battery charge and arrest. The arrest was a parole violation and subjected Martinez to immediate detention without bail until his trial on the domestic-battery charge. Despite having received this information, no one at IDOC ever issued a parole-violation warrant against Martinez. After his release on bail, Martinez continued to contact Mersaides, repeatedly violating the orders of protection. The complaint alleges that Chicago police were aware of these violations but never arrested Martinez.
That Martinez remained a free man ended tragically for Mersaides. As she was leaving a church service on the evening of April 6, 2008, Martinez blocked her vehicle with his own, trapping her in the church parking lot. He shot her multiple times, and she died of the gunshot wounds 30 minutes later. After leaving the scene, Martinez turned the gun on himself and committed suicide.
Mersaides’s father, Brewster McCauley, filed this suit as special administrator of his daughter’s estate. The complaint alleged 13 federal and state claims (primarily for deprivation of due process and equal protection, and for wrongful death) against the City of Chicago and unidentified Chicago police officers, IDOC, various IDOC officials, then-IDOC Director Roger Walker, and Martinez’s estate. The city and state defendants removed the case to federal court and moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The district court granted the motion, dismissed the federal claims, and declined to exercise supplemental jurisdiction over the state-law claims. See 28 U.S.C. § 1367(c)(3); Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp., 551 F.3d 599, 607 (7th Cir.2008).
Only the equal-protection claims against the City and Walker are at issue on appeal. The claim against the City was a policy-or-practice claim under Monell v. Department of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The complaint variously alleges that the City failed to have adequate policies in place for the protection of female victims of domestic violence. The court began its analysis of this claim by rejecting McCauley’s contention that female victims of domestic violence are a “suspect class” for equal-protection purposes. The judge opted for rational-basis review and then concluded that to avoid dismissal, McCauley needed to show that Mersaides was a member of a protected class. Noting that “protected class” and “suspect class” mean the same thing in equal-protection doctrine, the judge held that McCauley could not establish a necessary prerequisite for a claim under the Equal Protection Clause; that is, because Mersaides did not belong to a suspect class, she did not belong to a protected class either. That meant, the court held, that *615 McCauley could not satisfy the first requirement of a prima facie case of discrimination under the Equal Protection Clause. Finally, the court held that the complaint failed to state a “class of one” equal-protection claim against the City.
As for the claim against IDOC Director Walker, the district court held that the Eleventh Amendment’s sovereign-immunity protections barred McCauley from recovering damages against him in his official capacity. See Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001); Peirick v. IUPUI Athletics Dep’t, 510 F.3d 681, 695 (7th Cir.2007); Joseph v. Bd. of Regents of the Univ. of Wis. Sys., 432 F.3d 746, 748 (7th Cir.2005). McCauley asked the court for a limited opportunity to conduct discovery in an effort to find a factual basis for a personal-capacity claim against Walker. The court denied this request, essentially holding that it would be futile. Because McCauley’s equal-protection claim against the City failed as a matter of law, the court thought any similar claim against Walker in his personal capacity would fail as well.
II. Discussion
A. McCauley’s Equal-Protection Claim Against the City
We review de novo the district court’s order dismissing the equal-protection claim against the City. Brooks v. Ross, 578 F.3d 574, 578 (7th Cir.2009). To avoid dismissal, McCauley’s complaint must contain allegations that “ ‘state a claim to relief that is plausible on its face.’ ” Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Carp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). “A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” Id.
We note first that the district court’s analysis of McCauley’s claim against the City suffers from some analytical confusion; it conflates several distinct strains of equal-protection doctrine. The court began by holding that strict scrutiny did not apply because female victims of domestic violence are not a “suspect class” for purposes of equal-protection analysis. The court then opted for rational-basis review, bypassing any form of intermediate scrutiny. The judge then took a detour into the caselaw that applies to claims of discrimination in public employment under the Equal Protection Clause, citing Brown v. Budz, 398 F.3d 904, 916 (7th Cir.2005), and Salas v. Wisconsin Department of Corrections, 493 F.3d 913, 926 (7th Cir.2007), for the elements of a prima facie case under the burden-shifting approach borrowed from Title VII. Using this framework, the court held that because female domestic-violence victims are not a protected class, McCauley could not establish the first requirement of a prima facie case of discrimination. Finally, the court held that because the equal-protection claim was premised on Mersaides’s group affiliation as a victim of domestic violence, the complaint did not state a claim for a “class of one” equal-protection violation. See generally, Vill. of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (recognizing a “class of one” equal-protection claim); Srail v. Vill. of Lisle, Ill., 588 F.3d 940, 943-44 (7th Cir. 2009) (discussing the elements of a “class of one” claim).
This analysis is problematic for several reasons. For starters, analyzing the equal-protection claim under class-of-one doctrine was error. This is not a class-of-one case; McCauley has never contended that it is. Nor is the burden-shifting pri *616 ma facie case methodology appropriate here. That formula has been used in employment-discrimination claims arising under the Equal Protection Clause or 42 U.S.C. § 1981 because equal-protection claims alleging discrimination in public employment can be analogized to claims under Title VII. Importing the prima facie case requirements from Title VII doctrine makes sense in the public-employment context, but that approach does not apply more broadly to all equal-protection cases. Finally, whether female domestic-violence victims are properly considered a “suspect” or “protected” class for equal-protection analysis is a merits question. The answer determines what level of judicial review applies to the defendant’s actions, see, e.g., Srail, 588 F.3d at 943, a question not normally appropriate for resolution at the pleadings stage.[1]
Though the district court’s analysis was faulty, the equal-protection claim against the City was properly dismissed. To state a Monell claim against the City for violation of Mersaides’s right to equal protection, McCauley was required to “plead[ ] factual content that allows the court to draw the reasonable inference” that the City maintained a policy, custom, or practice of intentional discrimination against a class of persons to which Mersaides belonged. See Iqbal, 129 S.Ct. at 1949; Monell, 436 U.S. at 694, 98 S.Ct. 2018; Srail, 588 F.3d at 943. He did not meet this burden.
In reviewing the sufficiency of a complaint under the plausibility standard announced in Twombly and Iqbal, we accept the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth. Iqbal, 129 S.Ct. at 1951. After excising the allegations not entitled to the presumption, we determine whether the remaining factual allegations “plausibly suggest an entitlement to relicf.” Id. The “[f]actual allegations must be enough to raise a right to relief above the speculative level.” Twombly, 550 U.S. at 555, 127 S.Ct. 1955. That is, the complaint must contain “allegations plausibly suggesting (not merely consistent with)” an entitlement to relicf. Id. at 557, 127 S.Ct. 1955. If the allegations give rise to an “obvious alternative explanation,” Iqbal, 129 S.Ct. at 1951; Twombly, 550 U.S. at 567, 127 S.Ct. 1955, then the complaint may “stop[ ] short of the line between possibility and plausibility of ‘entitle[ment] to relief,’” Twombly, 550 U.S. at 557, 127 S.Ct. 1955. Making the plausibility determination is “a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.” Iqbal, 129 S.Ct. at 1950.
We have interpreted Twombly and Iqbal to require the plaintiff to “provid[e] some specific facts” to support the legal claims asserted in the complaint. Brooks, 578 F.3d at 581. The degree of specificity required is not easily quantified, but “the plaintiff must give enough details about the subject-matter of the case to present a story that holds together.” Swanson v. Citibank, N.A., 614 F.3d 400, 404 (7th Cir.2010). The required level of factual specificity rises with the complexity *617 of the claim. Id. at 405 (“A more complex ease ... will require more detail, both to give the opposing party notice of what the case is all about and to show how, in the plaintiffs mind at least, the dots should be connected.”).
Brooks and Swanson help illustrate the factual heft required to survive a motion to dismiss after Twombly and Iqbal. In Brooks the plaintiff was prosecuted for official misconduct and wire fraud relating to his duties as a Prison Review Board member. 578 F.3d at 578. He was acquitted on these charges and filed suit alleging a vast conspiracy by fellow board members, a state police officer, an IDOC employee, and the Illinois Attorney General based on their participation in or cooperation with the investigation against him. Id. The complaint alleged that the defendants “knowingly, intentionally!,] and maliciously prosecute[d]” him in retaliation for his exercise of constitutionally protected rights. Id. at 582. We held that this was “nothing more” than a “formulaic recitation of the cause of action,” insufficient to state a claim under Twombly and Iqbal. Id. The remaining allegations—primarily explaining each defendant’s role in the investigation—were just as consistent with a lawful investigation as an illegal conspiracy to retaliate against Brooks. Id. at 581 (“The behavior Brooks has alleged that the defendants engaged in is just as consistent with lawful conduct as it is with wrongdoing.”). Accordingly, we affirmed the dismissal of the complaint. Id. at 582.
In Swanson, on the other hand, we applied Twombly/Iqbal and held that the plaintiffs allegations were sufficient to survive a motion to dismiss on at least some of her claims. Swanson, an African-American loan applicant who was turned down for a loan, claimed that that the denial was based on her race in violation of the Fair Housing Act (among other causes of action). 614 F.3d at 402-03. Her complaint alleged that the defendants intentionally undervalued her home and that they did so because of her race. Id. at 403. She alleged that a third-party appraiser had valued the home at $240,000, much higher than the defendant’s valuation of $170,000. Id. We held that because Swanson’s claim of housing discrimination was uncomplicated, Swanson’s pleading burden under Twombly and Iqbal was satisfied. Id. at 404. Her complaint contained factual allegations identifying (1) who discriminated against her; (2) the type of discrimination that occurred; and (3) when the discrimination took place. Id. at 405. We held that given the straightforward nature of the claim, Twombly/Iqbal required nothing more. Id. (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511-12, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)).
This case is more like Brooks than Swanson. Many of the alleged “facts” are actually legal conclusions or elements of the cause of action, which may be disregarded on a motion to dismiss. See Iqbal, 129 S.Ct. at 1951. For example, McCauley alleges that the City “has an unwritten custom, practice and policy to afford lesser protection or none at all to victims of domestic violence” and that “[t]here is no rational basis” for this purported policy. Similarly, McCauley alleged the following:
[The City], through its agents, employees and/or servants, acting under color of law, at the level of official policy, practice, and custom, with deliberate, callous, and conscious indifference to McCauley’s constitutional rights, authorized, tolerated, and institutionalized the practices and ratified the illegal conduct herein detailed, and at all times material to this Complaint, [the City] had interrelated de facto policies, practices, and customs.
*618 These are the legal elements of the various claims McCauley has asserted; they are not factual allegations and as such contribute nothing to the plausibility analysis under Twombly/Iqbal.
Once the legal conclusions are disregarded, just one paragraph of factual allegations remains:
Defendant violated McCauley’s constitutional rights under 42 U.S.C. § 1983 by:
a. failing to provide adequate security and promptly arrest Martinez;
b. failing to promulgate any policy to ensure the prompt arrest of individuals guilty of violating protective orders;
c. maintaining a policy or custom of failing to timely arrest violators of protective orders;
d. maintaining a custom and practice of failing to adequately train officers concerning the necessity of promptly arresting individuals guilty of violating protective orders;
e. maintaining a policy or custom of failing to have safeguards in place to ensure that violators of protective orders were timely arrested;
f. failing to have a custom, practice and policy in effect to verify whether someone who is arrested for domestic violence is on parole;
g. failing to have a custom, practice and policy to communicate with state officials and law enforcement officials regarding domestic violence arrests;
h. failing to have a custom, practice and policy in effect in order to communicate with parole agents on domestic violence arrests;
i. failing to have a custom, practice and policy in effect to verify whether an arrestee of a domestic violence offense is on parole prior to issuing an order of protection; and
j. maintaining a custom, practice and policy of ignoring the seriousness of domestic violence arrests.
McCauley maintains that these allegations are sufficient to state a Monell equal-protection claim against the City. We disagree. In order to state a facially plausible equal-protection claim under Monell, the factual allegations in McCauley’s complaint must allow us to draw the reasonable inference that the City established a policy or practice of intentionally discriminating against female victims of domestic violence in the provision of police protection. That is, McCauley needed to allege enough “by way of factual content to ‘nudg[e]’ his claim of purposeful discrimination ‘across the fine from conceivable to plausible.’ ” Iqbal, 129 S.Ct. at 1952 (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).
Because the Equal Protection Clause is “concerned ... with equal treatment rather than with establishing entitlements to some minimum of government services, [it] does not entitle a person to adequate, or indeed to any, police protection.” Hilton v. City of Wheeling, 209 F.3d 1005, 1007 (7th Cir.2000); see also DeShaney v. Winnebago Cnty. Dep’t of Soc. Servs., 489 U.S. 189, 196, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) (The government’s failure to protect an individual from private violence is not actionable under the Due Process Clause.). “On the other hand, selective withdrawal of police protection, as when the Southern states during the Reconstruction era refused to give police protection to their black citizens, is the prototypical denial of equal protection.” Hilton, 209 F.3d at 1007. The allegations in the paragraph quoted above do not *619 plausibly suggest that the City maintained a policy or practice of selective withdrawal of police protection. To the contrary, the complaint alleges that the City failed to have particularized practices in place for the special protection of domestic-violence victims. In essence, the complaint alleges that the City failed to promulgate specific policies for this particular class of crime victims, not that the City denied this class of victims equal protection. At most, the factual allegations in the complaint plausibly suggest the uneven allocation of limited police-protection services; they do not plausibly suggest that the City maintained an intentional policy or practice of omitting police protection from female domestic-violence victims as a class.
Just as in Brooks, McCauley’s factual allegations are entirely consistent with lawful conduct—here a lawful allocation of limited police resources. 578 F.3d at 581. And the complexity of McCauley’s equal-protection claim distinguishes this case from Swanson. The housing-discrimination claim at issue in Swanson was quite straightforward. Putting the defendants on notice of what it entailed was simple, so Swanson did not need to plead much by way of factual content in her complaint. There, in the absence of an obvious legal alternative explanation, pleading the “who, what, and when” of the discrimination claim was enough. See Swanson, 614 F.3d at 405. Here, McCauley’s equal-protection claim is more complicated and counterintuitive. Yet he has alleged only that the City failed to have particularized safeguards in place for the special protection of domestic-violence victims. For the reasons we have explained, this does not state a Monell equal-protection claim against the City. This claim was properly dismissed.
B. Predismissal Discovery Against Walker
McCauley does not challenge the district court’s order dismissing the official-capacity equal-protection claim against Walker on Eleventh Amendment grounds. Instead, he argues that the court should have allowed him to conduct limited discovery regarding Walker’s personal involvement in the events leading to Mersaides’s murder on the chance he might unearth a basis for a claim against Walker in his individual capacity. We review the denial of McCauley’s discovery request for abuse of discretion. Griffin v. Foley, 542 F.3d 209, 223 (7th Cir.2008).
The district court’s refusal to authorize Rule 12(b)(6) discovery was based largely on the court’s view that any personal-capacity claim against Walker would suffer from the same deficiencies as the Monell claim against the City; namely, that Mersaides was not a member of a “suspect” or “protected” class for equal-protection purposes. For the reasons we have explained, this analysis is flawed. We nonetheless affirm on other grounds.
To determine whether pre-Rule 12(b)(6) discovery should have been available in this case, we need not decide the broader and more provocative question whether it should be available in general, in light of the Twombly/Iqbal pleading regime.[2] This is not a proper case for Rule *620 12(b)(6) discovery in any event. McCauley’s counsel conceded at oral argument that he “has nothing” to suggest that Walker was personally involved in any of the events leading to Mersaides’s death. Indeed, based on the complaint, there is no reason at all to think the IDOC director had any personal role in Martinez’s parole supervision, much less the specific events preceding Mersaides’s death. Accordingly, the denial of McCauley’s request for Rule 12(b)(6) discovery was not an abuse of discretion.
Affirmed.

. We note for completeness that McCauley makes alternative arguments on this point. He first argues that female victims of domestic violence ought to be recognized as a suspect class for equal-protection analysis, requiring strict scrutiny of the City’s actions. He argues in the alternative that the claim should be treated as more generally alleging discrimination on the basis of gender, which calls for the application of intermediate scrutiny. See United States v. Virginia, 518 U.S. 515, 531, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996).

. Proposals for some form of "Rule 12(b)(6) discovery” have proliferated in academic circles in the wake of Twombly and Iqbal. See, e.g., Arthur R. Miller, From Conley to Twombly to Iqbal: A Double Play on the Federal Rules of Civil Procedure, 60 Duke L.J. 1, 105— 10 (2010); Scott Dodson, New Pleading, New Discovery, 109 Mich. L.Rev. 53 (2010); Edward A. Hartnett, Taming Twombly, Even After Iqbal, 158 U. Pa. L.Rev. 473 (2010). The theory underlying this effort is that the plausibility standard for surviving a motion to dismiss requires new tools to meet the higher bar, especially where the information neces *620 sary to survive a motion to dismiss is wholly or largely in the defendant’s hands. See Miller, supra, at 105 (“Since the combined effect of Twombly, Iqbal, and the summary judgment trilogy is to require a plaintiff to have greater knowledge concerning his claim either before instituting an action or immediately thereafter, inequality of information access during those critical time frames poses a significant—if not the most significant—problem for many people seeking affirmative relicf.”).