NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 11, 2012
Decided December 20, 2012

**Before**

WILLIAM J. BAUER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 12-2378

| | |
|---|---|
| A.B., a child, by his next friend LINDA KEHOE, <br>     *Plaintiff-Appellant,* | Appeal from the United States District Court for the Northern District of Indiana, South Bend Division. |
|     *v.* | No. 3:11-cv-163 |
| HOUSING AUTHORITY OF SOUTH BEND, INDIANA, <br>     *Defendant-Appellee.* | Philip P. Simon, <br> *Chief Judge.* |

**O R D E R**

A.B., a minor, lived with his mother, Autumn Oliver, in federally subsidized public housing in South Bend, Indiana. Oliver received an eviction notice from the Housing Authority of South Bend after being arrested for possessing cocaine, in violation of a lease provision that prohibited criminal activity on the property. A.B. sued the Housing Authority on Oliver's behalf, alleging violations of the Americans with Disabilities Act (ADA), the Rehabilitation Act, the Fair Housing Act (FHA), the Fourteenth Amendment, and Indiana state law. The district court dismissed the federal claims with prejudice and the remaining state-law claims without prejudice. We affirm the judgment.

Oliver entered into a lease with the Housing Authority in 2005. The lease provides that the Housing Authority "has a One Strike or 'Zero Tolerance' policy with respect to violations of Lease terms regarding criminal activity" and "[a]ny drug-related criminal activity on or off such premises" is grounds for termination of the lease and eviction from the unit. The lease lists Oliver's son, A.B., as a household member.

The South Bend police arrested Oliver near her unit on February 28, 2011 and charged her with cocaine possession. IND. CODE § 35-48-4-6. About three weeks later on March 22 (before any conviction or other adjudication confirming her drug possession), the Housing Authority sent Oliver a "Notice to Terminate Lease"; the notice informed her that she had materially violated the terms of her lease by engaging in drug-related "criminal activity" and gave her 30 days to vacate the unit (April 22, 2011).

On April 13, 2011, nine days before the eviction date, Oliver pleaded guilty to possession of cocaine. The plea agreement stated, however, that if Oliver successfully completed a substance-abuse program and otherwise complied with the terms of the agreement, the prosecutor would (1) allow her to withdraw her plea and (2) move for dismissal of the case after 18 months. Oliver then entered into a substance-abuse program.

Notwithstanding Oliver's entry into the substance abuse program, the Housing Authority filed an action in Indiana state court seeking enforcement of the eviction and immediate possession of the unit, because Oliver and A.B. continued to reside in the unit after the April 22 deadline indicated on the notice. A.B. filed a complaint in the Northern District of Indiana through his grandmother and next friend, Linda Kehoe, alleging that the threatened eviction violated state and federal law. The state court then ordered Oliver to vacate and surrender the unit, and the district court dismissed the federal claims for failing to adequately allege discrimination; the court, however, invited A.B. to replead.  By the time A.B. amended his complaint in October 2011, Oliver was continuing to participate in, and was in good standing with, the substance-abuse program.

In the amended complaint, A.B. alleged that the Housing Authority evicted Oliver on the basis of her disability—drug addiction—and refused to reasonably accommodate this disability in violation of the FHA, 42 U.S.C. § 3604(f), the ADA, 42 U.S.C. § 12132, and the Rehabilitation Act, 29 U.S.C. § 794. A.B. also alleged that the Housing Authority violated the Equal Protection Clause by intentionally treating Oliver, a class-of-one plaintiff, differently than other similarly situated tenants without a rational basis for the difference. A.B. further alleged that the Housing Authority's actions violated the Due Process Clause and Indiana law. He sought a declaratory judgment, an injunction, attorney's fees, and both compensatory and exemplary damages.

The district court dismissed A.B.'s amended complaint. The court first concluded that Oliver was a current drug user when the Housing Authority sent the eviction notice. Oliver did not fall under the "safe harbor" provisions of those statutes for *past* drug users, the court concluded, because the Housing Authority sent the eviction notice in response to her admitted cocaine use only three weeks prior. And even if Oliver did qualify as a disabled person, the court stated, the claims under the ADA, Rehabilitation Act, FHA, and Equal Protection Clause failed because A.B.'s bare legal conclusions did not sufficiently allege that the Housing Authority acted with discriminatory intent. Finally, the court determined that A.B.'s requested accommodation of an exception to the one-strike policy for Oliver was not reasonable.

On appeal A.B. first argues that the district court erroneously concluded that Oliver was a "current drug user" when the Housing Authority sent the eviction notice. Current users of illegal drugs do not qualify as disabled persons[1] under the ADA, the Rehabilitation Act, and the FHA. *See* 42 U.S.C. § 12210(a) (ADA); 29 U.S.C. § 705(20)(C)(i) (Rehabilitation Act); 42 U.S.C. § 3602(h) (FHA). An individual is a current drug user if her "drug use was sufficiently recent to justify [a] reasonable belief that the drug abuse remained an ongoing problem." *Mauerhan v. Wagner Corp.*, 649 F.3d 1180, 1187 (10th Cir. 2011); (internal quotations omitted); *see Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 855–56 (5th Cir. 1999). Although Oliver eventually entered a supervised rehabilitation program in April 2011, and former drug users participating in supervised drug rehabilitation programs may qualify as disabled persons under the ADA and the Rehabilitation Act, *see* 42 U.S.C. § 12210(b) (ADA); 29 U.S.C. § 705(20)(C)(ii) (Rehabilitation Act), Oliver unfortunately still qualified as a "current drug user" as of March 22, when the eviction notice was first sent, three weeks before she entered into the rehabilitation program. She used cocaine on the premises less than a month before the Housing Authority sent the eviction notice, and her lease spelled out the Housing Authority's one-strike policy, which allowed for immediate termination of the lease following any drug-related criminal activity. Given this timing, from the perspective of the Housing Authority, it had a reasonable belief that her drug abuse was an ongoing problem at the time it sent the eviction notice in March 22. Oliver therefore was not considered "disabled" under the ADA, the Rehabilitation Act, and the FHA.

---

[1] All three statutes prohibit housing discrimination because of a person's "disability" or "handicap," and because the terms are used interchangeably, we use the term "disabled" to refer to all three acts. *See Bragdon v. Abbott*, 524 U.S. 624, 631–32 (1998); *Stein v. Ashcroft*, 284 F.3d 721, 725 n.2 (7th Cir. 2002); *Dadian v. Vill. of Wilmette*, 269 F.3d 831, 837 (7th Cir. 2001).

A.B. also challenges the district court's conclusion that the amended complaint failed to allege discriminatory intent, which is a required element of his disparate treatment claims under the Equal Protection Clause. *Chavez v. Ill. State Police*, 251 F.3d 612, 645 (7th Cir. 2001). We agree with the district court that A.B. cannot state a claim through conclusory allegations that the Housing Authority's "purported reasons for threatening to evict A.B. and his mother are illegal or pretextual, and only a cover for discrimination against A.B.'s mother as an individual with a handicap," and that it "favored tenants in situations similar to A.B. and his mother by not evicting those tenants." *See Ashcroft v. Iqbal*, 556 U.S. 662, 686–87 (2009); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010); *see also LaBella Winnetka, Inc. v. Vill of Winnetka*, 628 F.3d 937, 941–42 (7th Cir. 2010) (concluding that restaurant did not state class-of-one equal protection claim because it failed to adequately allege the existence of a similarly situated restaurant).

A.B. argues that it is a reasonable accommodation for the Housing Authority to provide a tenant a "second chance" opportunity to remain in her dwelling so long as she immediately seeks treatment for the drug use. *See Super v. J. D'Amelia & Assocs.*, No. 3:09cv831, 2010 WL 3926887, at *6 (D. Conn. Sept. 30, 2010). Though the Housing Authority reasonably believed that Oliver was a "current drug user" on March 22 when it sent the initial eviction notice, it went ahead with the eviction proceedings around April 22 even though Oliver had already entered into a substance-abuse program by then and she had a dependent child. At the end of the day, however, we do not reach the issue of "reasonable accommodation" because under the law, Oliver was not "disabled" given her "current drug user" status at the relevant time. We are hopeful, especially for the sake of A.B., that Oliver will not reacquire that status in the future.

AFFIRMED.