In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 13-3249

BEVERLY WIGGINTON, RICHARD WIGGINTON, and TRINITY LOVE WIGGINTON,

*Plaintiffs-Appellants,*

*v.*

BANK OF AMERICA CORPORATION, *et al.*,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 11 C 50162 — **Frederick J. Kapala**, *Judge.*

———————————

ARGUED OCTOBER 9, 2014 — DECIDED OCTOBER 16, 2014

———————————

Before BAUER, EASTERBROOK, and KANNE, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Beverly and Richard Wigginton receive disability benefits from the Social Security Administration. They applied to Bank of America for a mortgage loan and said that they would use the disability benefits to repay. The Bank then asked for information from their physicians, or the Administration, showing that the benefits would last for at least three years. When no such in-

formation was forthcoming, the Bank declined to make the loan. An administrative complaint and negotiations followed; by the time the Bank decided to advance the money, the property's owner had pulled out of the transaction.

The Wiggintons contend in this suit that the Bank's demand for information violated the Fair Housing Act, the Americans with Disabilities Act, and the Rehabilitation Act. The district court recruited counsel to assist the Wiggintons, and the complaint was twice amended to add details and new defendants, including multiple federal agencies. The court eventually dismissed the suit on the pleadings, 2013 U.S. Dist. LEXIS 129337 (N.D. Ill. Sept. 11, 2013), ruling that the Wiggintons had not narrated a plausible complaint of discrimination. The court added that the Equal Credit Opportunity Act, 15 U.S.C. §1691(b)(2), provides that it does not constitute discrimination (at least for the purpose of that statute) for a bank to collect information about "whether the applicant's income derives from any public assistance program if such inquiry is for the purpose of determining the amount and probable continuance of income levels, credit history, or other pertinent element of credit-worthiness".

It does not take much to allege discrimination, see *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *Swanson v. Citibank, N.A.*, 614 F.3d 400 (7th Cir. 2010), but one essential allegation is missing from the Wiggintons' complaint: that someone else has been treated differently. The Bank apparently asks *everyone* who applies for a loan to provide a good reason for it to think that the applicant's current income will continue. The Bank's operations manuals, and the advice it has received from several federal agencies, including the Department of Housing and Urban Development and the

Federal Housing Administration, which was to insure the loan, set the three-year-continuation standard, and these documents also call on banks to collect information from any applicant who relies on governmental-assistance programs for repayment. See HUD Handbook 4155.1 §§ 4.D.1.a, 4.D.2.k, 4.E.3.c. If the Bank regularly asks non-disabled applicants to show that their income can be expected to continue for at least three years, there has been no discrimination.

Plaintiffs' complaint and appellate brief suppose that federal law blocks a bank from asking either the nature of the disability (from which the likely duration of benefits can be inferred) or the probability that the paying agency will continue the benefits. Yet the statutes forbid *discrimination*, not requests for knowledge that will enable banks to apply uniform standards. Section 805(a) of the Fair Housing Act, 42 U.S.C. §3605(a), makes it unlawful for anyone in the residential real-estate business "to discriminate against any person in making available such a transaction … because of … handicap". The Rehabilitation Act, 29 U.S.C. §794, says that "[n]o otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in … or be subjected to discrimination under any program or activity receiving Federal financial assistance". Title III of the Americans with Disabilities Act, 42 U.S.C. §12182(a) provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of" places of public accommodation. None of these statutes forbids asking applicants for information that will be used to apply the same standards that govern non-disabled persons.

If all disability benefits were locked in for life, then a request for information might be gratuitous. Yet Social Security disability benefits depend on the continuation of the disability—and plaintiffs, who have declined to reveal the nature of their disabilities, do not contend that the Bank knew (or should have known) that their entitlement to benefits was bound to last indefinitely. Benefits based on obesity, for example, lapse if the recipient loses weight and regains ability to work. Benefits based on many conditions can end if improved medication (or a person's improved ability to stick to a schedule of medication) improves his condition. The recipient's level of education can be important; if a person goes back to school and expands the range of jobs he can do, benefits may cease.

Disability benefits under private programs likewise can change. One kind of program that employers provide as a fringe benefit awards payments for two years if the person can no longer do his job, but after two years only if the person cannot perform any job in the economy. Benefits under a program such as this can end without any change in the recipient's education or physical condition. The possibility of such changes makes it prudent for potential lenders to know what kind of disability an applicant has and how that disability is treated by the public or private payor. That's why the Equal Credit Opportunity Act permits requests for information about all public-assistance benefits. A potential lender likewise wants to know what kind of job an applicant holds, for how long, and whether that job is likely to last— for that matter, whether the employer is likely to remain in business. Learning about the probable duration of disability benefits is no different in principle.

Because the complaint does not allege that plaintiffs have been treated worse than other applicants for loans, the district court properly dismissed the suit. Plaintiffs observe that, three years after denying their application, the Bank settled a suit by the Department of Justice and promised not to ask for the sort of information it sought from plaintiffs. Under the settlement, the Bank will use an applicant's history of receiving benefits as sufficient reason to think that they will continue. Settlements do not affect third parties' rights, however. Litigation may be settled for business reasons. Plaintiffs' suit depends on the three statutes they have invoked, not on subsequent settlements.

As for the claims against the federal agencies: Plaintiffs concede that the district court properly dismissed them but ask for permission to amend their complaint a third time. Even now, however, they do not explain what theory could produce a remedy against the federal agencies or how they could avoid a defense of sovereign immunity. The district court did not abuse its discretion in bringing this litigation to a close.

AFFIRMED