WYNN, Circuit Judge,
dissenting in part.
I do not agree with that part of the majority’s opinion that affirms the dismissal of Dawnn McCleary-Evans’s claim that she was discriminated against because of her race. This case brings into stark relief the tension embedded in the Supreme Court’s recent jurisprudence regarding Rule 8 pleading requirements. It requires us to reconcile the Supreme Court’s decisions in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), with its decision in Swierkiewicz v. Sorema N. A., 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)-no small task as the inconsistent case law in this area shows.
The Supreme Court’s decisions in Twombly and Iqbal, which underpin the majority’s holding, each speak to the proper application of Rule 8(a)(2) of the Federal Rules of Civil Procedure. That rule continues to be the yardstick by which courts measure the sufficiency of civil complaints. The language of the rule thus makes for a good starting point for any court’s consideration of a motion to dismiss for failure to state a claim. The rule provides:
(a) Claim for Relief. A pleading that states a claim for relief must contain:
(2) a short and plain statement of the claim showing that the pleader is entitled to relief....
Fed.R.Civ.P. 8(a)(2).
Time and again the Supreme Court has reiterated that Rule 8(a)(2) sets forth a “liberal pleading standard[],” one which does not contemplate the pleading of “specific facts.” Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). And the Supreme Court’s recent jurisprudence has not extinguished what has been the guiding star of 12(b)(6) jurisprudence for the last forty years-“fair notice to the defendant.” Id. at 93, 127 S.Ct. 2197 (internal quotation marks and citations omitted). Indeed, the Court stated in Twombly and reiterated less than a year later in Erickson that the short and plain statement required under Rule 8(a)(2) “need only ‘give the defendant fair notice *589 of what the ... claim is and the grounds upon which it rests.’ ” Id. (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955). Nor has the Court abandoned the longstanding requirement that judges “accept as true all of the factual allegations contained in the complaint.” Id. at 94, 127 S.Ct. 2197.
What the Court’s recent cases have done, however, is require that a plaintiff do more than raise a remote possibility of relief. The now familiar moniker for the plaintiffs burden is “plausibility.” While the Court’s delineation of the plausibility requirement may be somewhat “opaque,” Swanson v. Citibank, N.A., 614 F.3d 400, 411 (7th Cir.2010) (Posner, dissenting), the Court has given lower courts a few signposts to travel by. We know, for instance, that more is required than “a sheer possibility that a defendant has acted unlawfully.” factual content to “ 'nudg[e]’ his claim of purposeful discrimination ‘across the line from conceivable to plausible.’ ” Id. at 683, 129 S.Ct. 1937 (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).
Yet we also know that “[t]he plausibility standard is not akin to a ‘probability requirement.’ ” Id. at 678, 129 S.Ct. 1937. In other words, it need not appear from the complaint that the plaintiffs claims are likely to succeed. As this Court recently recognized, “[ajlthough ... the factual allegations in a complaint must make entitlement to relief plausible and not merely possible, what Rule 12(b)(6) does not countenance are dismissals based on a judge’s disbelief of a complaint’s factual allegations.” McLean v. United States, 566 F.3d 391, 399 (4th Cir.2009) (internal quotation marks, alterations and citations omitted). Further, plausibility will not look the same in every ease; assessing plausibility is “a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.” Iqbal, 556 U.S. at 679, 129 S.Ct. 1937.
In evaluating the allegations in McCleary-Evans’s complaint, however, we are not limited to the sparse guidance to be gleaned from Twombly and Iqbal. In 2002 the Supreme Court decided Swierkiewicz, a case involving the sufficiency of a wrongful termination claim under Title VII. 534 U.S. 506, 122 S.Ct. 992. In a unanimous opinion authored by Justice Thomas, the Court held that “a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of discrimination under the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 [93 S.Ct. 1817, 36 L.Ed.2d 668] (1973).” Id. at 508, 122 S.Ct. 992. To the contrary, the plaintiff “easily satisfie[d]” Rule 8(a)(2) when he “detailed the events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination.” Id. at 514, 122 S.Ct. 992 (emphasis added). The Court held that such allegations “give respondent fair notice of what petitioner’s claims are and the grounds upon which they rest.” Id. Five years later, the Court told us that Swierkiewicz remains good law, specifically referencing the factual allegations that the Swierkiewicz Court deemed sufficient to state “grounds showing entitlement to relief.” Twombly, 550 U.S. at 569-70, 127 S.Ct. 1955.
While the majority pays lip service to Swierkiewicz, acknowledging that a plaintiff need not plead a prima facie case of discrimination under the McDonnell Douglas framework to comply with Rule 8(a)(2), see supra at 584-85, it entirely ignores the factual underpinnings of the Swierkiewicz holding, looking solely to the Supreme Court’s 2009 decision in Iqbal to guide its decision. In Iqbal, a Pakistani man who had been detained during the weeks following the September 11th attacks alleged *590 that United States Attorney General John Ashcroft and Federal Bureau of Investigations Director Robert Mueller had “adopted an unconstitutional policy that subjected [him] to harsh conditions of confinement on account of his race, religion, or national origin.” Id. at 666, 129 S.Ct. 1937. In a five-four decision, the Court held that Iqbal’s claims against Ashcroft and Mueller did not satisfy federal pleading requirements. While acknowledging that Rule 9 of the Federal Rules of Civil Procedure “excuses a party from pleading discriminatory intent under an elevated pleading standard,” id. at 686, 129 S.Ct. 1937, the Court held that Iqbal’s bare assertions of Ashcroft and Mueller’s discriminatory purpose were not entitled to the assumption of truth and that the remainder of his complaint failed to state a plausible claim. Id. at 697, 129 S.Ct. 1937.
The apparent tension between the Court’s decisions in Iqbal and Swierkiewicz is well-documented.[1] Despite this tension, however, “we have no authority to overrule a Supreme Court decision no matter ... how out of touch with the Supreme Court’s current thinking the decision seems.” Scheiber v. Dolby Labs., Inc., 293 F.3d 1014, 1018 (7th Cir.2002) (Posner, J.). See also Columbia Union College v. Clarke, 159 F.8d 151, 158 (4th Cir.1998) (recognizing that “lower courts are not to conclude that the Court’s more recent cases have, by implication, overruled its earlier precedent” (alterations and internal quotation marks omitted)). This is particularly true where, as here, the Supreme Court has said loud and clear that its prior decision has not been overruled.
We are therefore confronted with two Supreme Court cases having apparent relevance to the case before us. One of these cases, Swierkiewicz, involves a Title VII plaintiff who alleged that his employer wrongfully terminated him due to his national origin. The other, Iqbal, involves a suspected terrorist who alleged that he was mistreated pursuant to an unconstitutional policy instituted by the United States Attorney General in conjunction with the Director of the Federal Bureau of Investigations. I have little difficulty deciding which case has greater applicability to the run-of-the-mill employment discrimination case before us.[2]
The Seventh Circuit adopts the view that Swierkiewicz should continue to guide courts’ application of federal pleading requirements in straightforward discrimination cases. In Swanson v. Citibank, N.A., the plaintiff alleged that Citibank denied her loan application because she was African-American in violation of the Fair Housing Act. 614 F.3d at 402-08. The court concluded that the complaint satisfied the Twombly/Iqbal plausibility stan *591 dard where the plaintiff identified “the type of discrimination that she thinks occur[ed] (racial), by whom (Citibank, through Skertich, the manager, and the outside appraisers it used), and when (in connection with her effort in early 2009 to obtain a home-equity loan).” Id. at 405. The court held that the plausibility standard must be viewed through the lens of Smerkiewicz in most straightforward discrimination cases. Id. at 404. In reaching this holding, the court offered the following illustration:
A plaintiff who believes that she has been passed over for a promotion because of her sex will be able to plead that she was employed by Company X, that a promotion was offered, that she applied and was qualified for it, and that the job went to someone else. That is an entirely plausible scenario, whether or not it describes what “really” went on in this plaintiffs case.
Id. at 404-405 (emphasis added). Even Judge Posner, who dissented in Swanson, acknowledged that Swierkiewicz — though distinguishable in his view — remains good law, recognizing that “lower-court judges are not to deem a Supreme Court decision overruled even if it is plainly inconsistent with a subsequent decision.” Id. at 410.
Turning to McCleary-Evans’s complaint, it is clear that her allegations go beyond what Swierkiewicz (and well-beyond what Swanson) found sufficient to satisfy Rule 8(a)(2). McCleary-Evans contends that she applied for two positions with the Maryland Department of Transportation’s State Highway Administration. She lays out in immense detail her qualifications for these positions. She identifies the Highway Administration employees responsible for denying her applications, and states that both were non-African American. She alleges that she and other African Americans who applied for positions with the Highway Administration were denied employment in favor of non-African American applicants. Finally, she alleges that based on her interview experience and what she apparently perceived as a discriminatory history of hires within the Highway Administration, her race played a role in the decision to hire non-African-American candidates over her. In this particular context, drawing on “judicial experience and common sense,” Iqbal, 556 U.S. at 679, 129 S.Ct. 1937, McCleary-Evans’s claim of race discrimination is eminently plausible.
I am not unmindful of the policy concerns that underlie the Supreme Court’s decisions in Twombly and Iqbal. As Judge Posner pointed out in his Swanson dissent, the Court quite clearly aimed to curb the rising costs of discovery born by defendants facing meritless lawsuits and to quell the tide of “extortionate litigation” in this country. Swanson, 614 F.3d at 411 (Posner, dissenting) (citing Frank H. Easterbrook, “Discovery as Abuse,” 69 B.U.L.Rev. 635, 639 (1989)). Indeed, the Twombly/Iqbal standard incentivizes plaintiffs to be more diligent in their pre-litigation investigations, thereby bringing greater balance to the asymmetric discovery burdens that may arise in litigation.
Yet if we are to consider litigation costs in the application of federal pleading standards, we must take care not to ignore the costs borne by plaintiffs and society as a whole when meritorious discrimination lawsuits are prematurely dismissed. See Miller, supra at 61. We ought not forget that asymmetric discovery burdens are often the byproduct of asymmetric information. The district court’s decision below exemplifies the risks posed by an overly broad reading of Twombly and Iqbal. The district court faulted McCleary-Evans for failing to allege how much control the *592 Highway Administration employees named in the complaint “wield[ed]” over other members of the hiring committee and failing to identify the qualifications of the selected candidates. J.A. 27-28. It is simply unrealistic to expect McCleary-Evans to allege such facts without the benefit of at least some limited discovery. When we impose unrealistic expectations on plaintiffs at the pleading stage of a lawsuit, we fail to apply our “judicial experience and common sense” to the highly “context-specific task” of deciding whether to permit a lawsuit to proceed to discovery. Iqbal, 556 U.S. at 679, 129 S.Ct. 1937. At the early stages of Title VII litigation, borderline conclusory allegations may be all that is available to even the most diligent of plaintiffs. The requisite proof of the defendant’s discriminatory intent is often in the exclusive control of the defendant, behind doors slammed shut by an unlawful termination.[3]
Finally, I must take issue with the majority’s suggestion that by “retiring” the Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), “no set of facts” standard in Twombly, 550 U.S. at 563, 127 S.Ct. 1955, the Supreme Court all but retired Swierkiewicz. Under the majority’s view, what remains of Swierkiewicz after Twombly is the bare holding that courts should not use the magic words of McDonnell Douglas to assess the sufficiency of Title VII claims at the 12(b)(6) stage. Thus, the majority would render Swierkiewicz a hollow shell and mute its primary thrust — namely, that discriminatory intent need not be pled with specific facts.[4] But the Supreme Court in Swierkiewicz specifically forbade using judicial interpretation to limit the scope of its holding. Indeed, in Swierkiewicz, in response to the argument that the Court’s holding would “burden the courts” by “allowing lawsuits based on conclusory allegations of discrimination to go forward,” Swierkiewicz, 534 U.S. at 514, 122 S.Ct. 992, Justice Thomas, writing for a unanimous Court, stated that “[a] requirement of greater specificity for particular claims is a result that ‘must be obtained by the process of amending the Federal Rules, and not by judicial interpretation.’ ” Id. (emphasis added) (quoting Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168-169, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)). As far as I am aware, no amendment to the Federal Rules has taken effect since the Court’s ruling in Swierkiewicz that would require the level of specificity that the majority by its own “judicial interpretation” demands from McCleary-Evans.
Because McCleary-Evans’s complaint states a plausible claim of discrimination on the basis of race, I respectfully dissent.

. See, e.g., McCauley v. City of Chicago, 671 F.3d 611, 623 (7th Cir.2011) (Hamilton, dissenting) (“Iqbal ... created tension with Swierkiewicz by endorsing its holding while simultaneously appearing to require the same sort of fact-specific pleading of discriminatory intent that the Swierkiewicz Court rejected."); Starr v. Baca, 652 F.3d 1202, 1215 (9th Cir.2011) (“The juxtaposition of Swierkiewicz . .. on the one hand, and ... Iqbal, on the other, is perplexing”); Arthur R. Miller, From Conley to Twombly to Iqbal: A Double Play on the Federal Rules of Civil Procedure, 60 Duke L.J. 1, 31 (2010) (noting that the tension between Iqbal and Swierkiewicz has "caus[ed] confusion and disarray among judges and lawyers”).

. Further, I agree with Judge Hamilton's view that “we must take care not to expand Iqbal too aggressively beyond its highly unusual context — allegations aimed at the nation's highest-ranking law enforcement officials based on their response to unprecedented terrorist attacks on the United States homeland — to cut off potentially viable claims.” McCauley v. City of Chicago, 671 F.3d 611, 628-29 (7th Cir.2011) (Hamilton, J., dissenting).

. This state of affairs has led some commentators to argue for a broadened use of predismissal discovery, a tool that is within the discretion of district courts. See, e.g., Suzette M. Malveaux, Front Loading and Heavy Lifting: How Pre-Dismissal Discovery Can Address the Detrimental Effect of Iqbal on Civil Rights Cases, 14 Lewis & Clark L.Rev. 65 (2010).

. Indeed, in affirming dismissal of Swierkiewicz!'s national origin discrimination claim, the Second Circuit stated, "the only circumstances Swierkiewicz pled are that he is Hungarian, others at Sorema are French, and the conclusory allegation that his termination was motivated by national origin discrimination. .... [T]hese allegations are insufficient as a matter of law to raise an inference of discrimination.” Swierkiewicz v. Sorema, N.A., 5 Fed.Appx. 63, 64 (2d Cir.2001) rev’d, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1. That a unanimous Supreme Court explicitly rejected the Second Circuit’s demand for greater specificity cannot be ignored.