UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 13-2488**

───────────

DAWNN MCCLEARY-EVANS,

           Plaintiff - Appellant,

     v.

MARYLAND DEPARTMENT OF TRANSPORTATION, STATE HIGHWAY
ADMINISTRATION,

           Defendant - Appellee.

───────────

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   Catherine C. Blake, District Judge.
(1:13-cv-00990-CCB)

───────────

Argued:  December 9, 2014          Decided:  March 13, 2015

───────────

Before NIEMEYER, WYNN, and DIAZ, Circuit Judges.

───────────

Affirmed by published opinion.  Judge Niemeyer wrote the
majority opinion, in which Judge Diaz joined.  Judge Wynn wrote
a separate opinion dissenting in part.

───────────

**ARGUED:** John Henry Morris, Jr., LAW OFFICE OF JOHN H. MORRIS,
JR., Baltimore, Maryland, for Appellant.  DeNisha A. Watson,
OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland,
for Appellee.  **ON BRIEF:**  Douglas F. Gansler, Attorney General
of Maryland, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND,
Baltimore, Maryland, for Appellee.

───────────

NIEMEYER, Circuit Judge:

Dawnn McCleary-Evans commenced this action against the Maryland Department of Transportation's State Highway Administration, alleging that the Highway Administration failed or refused to hire her for two positions for which she applied because of her race (African American) and her sex (female), in violation of Title VII of the Civil Rights Act of 1964, specifically 42 U.S.C. § 2000e-2(a)(1). In her complaint, she alleged that she was highly qualified for the positions, but that the decisionmakers were biased and had "predetermined" that they would select white candidates to fill the positions.

The district court granted the Highway Administration's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), concluding that the complaint failed to allege facts that plausibly support a claim of discrimination. Because we agree that McCleary-Evans failed to include adequate factual allegations to support a claim that the Highway Administration discriminated against her <u>because</u> she was African American or female, we accordingly affirm. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007))).

I

McCleary-Evans worked for over 20 years as a project manager on environmental regulatory compliance projects while employed at the Maryland Department of Natural Resources and the Maryland Transit Administration. In late 2009 and early 2010, she applied for two open positions in the Highway Administration's Environmental Compliance Division, interviewing first for a position as an assistant division chief and later for a position as an environmental compliance program manager. Despite her prior work experience and education, which she alleged made her "more than qualified" for the two positions, she was not selected for either position. Instead, as the complaint asserted, "The positions in question were filled by non-Black candidates."

McCleary-Evans' claim that the Highway Administration did not hire her "because of the combination of her race and gender" relies essentially on two paragraphs of her complaint. In one, she alleged that her applications were "subject to a review panel significantly influenced and controlled by . . . Gregory Keenan, a White male in the Office of Environmental Design ('OED') who worked under the supervision of OED Director, Sonal Sangahvi, a non-Black woman," and that "[d]uring the course of her interview, and based upon the history of hires within OED, . . . both Keenan and Sangahvi predetermined to select for

3

both positions a White male or female candidate." In the other paragraph, she similarly alleged that, "although African American candidates had been among the selection pool," "Keenan and Sangahvi, for reasons of race and gender, overlooked the African American candidates to select White male, preferably, and White female candidates." In short, she claimed in conclusory fashion that the decisionmakers were biased when making the decision. And the complaint did not include any allegations regarding the qualifications or suitability of the persons hired to fill the two positions.

In dismissing her claim, the district court concluded that McCleary-Evans had failed to "allege facts that plausibly support a claim of discrimination." The court reasoned that because this was a case with "no direct evidence of discrimination," McCleary-Evans needed to allege facts sufficient to "state a prima facie case of discrimination for failure to hire by showing: (1) that she is a member of the protected class; (2) that the employer had an open position for which she applied or sought to apply; (3) that she was qualified for the position; and (4) that she was rejected under circumstances giving rise to an inference of unlawful discrimination." It noted that, while McCleary-Evans had sufficiently alleged the first three prongs of the prima facie case, she had not "stated facts sufficient to meet the pleading

4

requirements as to the fourth prong." Her complaint, the court said, "offer[ed] nothing to support her conclusory assertions [of discrimination] beyond an unsubstantiated mention of 'a history of hires' within the division[] and statements identifying her race, the races of the two members of the hiring review panel, and the races of the two applicants hired for the positions." The court concluded that, "[b]ecause discrimination cannot be presumed simply because one candidate is selected over another candidate, McCleary-Evans ha[d] not pled adequate facts to give rise to a reasonable inference of discrimination."

From the district court's order dismissing her complaint, McCleary-Evans filed this appeal.

## II

McCleary-Evans contends that the district court imposed on her a pleading standard "more rigorous" than Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002), allows, by analyzing her claim under the standard set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), for proving a prima facie case of discrimination. She maintains that the "District Court's decision fails to demonstrate the deficiency of the Complaint as a pleading, but rather offers authority that only works as a challenge to demonstrate deficiency as evidentiary proof." (Emphasis added).

In Swierkiewicz, the Supreme Court held that "an employment discrimination plaintiff need not plead a prima facie case of discrimination . . . to survive [a] motion to dismiss," 534 U.S. at 515, because "[t]he prima facie case . . . is an evidentiary standard, not a pleading requirement," id. at 510, that may require demonstrating more elements than are otherwise required to state a claim for relief, id. at 511-12. The Court stated that requiring a plaintiff to plead a prima facie case would amount to a "heightened pleading standard" that would conflict with Federal Rule of Civil Procedure 8(a)(2). Id. at 512. As the Court explained:

> [I]t is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the McDonnell Douglas framework does not apply in every employment discrimination case. For instance, if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case.

Id. at 511. Accordingly, the Court concluded that "the ordinary rules for assessing the sufficiency of a complaint apply," referring to Federal Rule of Civil Procedure 8(a)(2). Id.

In light of Swierkiewicz, McCleary-Evans appropriately argues that the district court erred in its analysis by requiring her to plead facts establishing a prima facie case of discrimination to survive a motion to dismiss. But the district court's erroneous analysis in this case will not save the complaint if, under the "ordinary rules for assessing the

6

sufficiency of a complaint," Swierkiewicz, 534 U.S. at 511, it fails to state a plausible claim for relief under Title VII. See Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) ("[W]hile a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, see Swierkiewicz, '[f]actual allegations must be enough to raise a right to relief above the speculative level'" (citation omitted) (quoting Twombly, 550 U.S. at 555)).

Federal Rule of Civil Procedure 8(a)(2) "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (internal quotation marks and citation omitted). But this rule for pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Instead, a complaint must contain "[f]actual allegations [sufficient] to raise a right to relief above the speculative level." Id.; see also Iqbal, 556 U.S. at 678 (holding that a complaint "tender[ing] 'naked assertion[s]' devoid of 'further factual enhancement'" does not "suffice" (quoting Twombly, 550 U.S. at 557)). The Supreme Court has accordingly held that Rule 8(a)(2) requires that "a complaint . . . contain[] sufficient factual matter, accepted as true, to 'state a claim

7

to relief that is <u>plausible</u> on its face'" in the sense that the complaint's factual allegations must allow a "court to draw the <u>reasonable inference</u> that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (emphasis added) (quoting <u>Twombly</u>, 550 U.S. at 570); <u>see also</u> <u>Coleman</u>, 626 F.3d at 191 (finding a complaint inadequate because its allegations "fail[ed] to establish a plausible basis for believing . . . that race was the true basis for [the adverse employment action]").

In her complaint, McCleary-Evans purported to state a claim under Title VII, which means that she was required to allege facts to satisfy the elements of a cause of action created by that statute -- <u>i.e.</u>, in this case, that the Highway Administration "fail[ed] or refus[ed] to hire" her "<u>because of</u> [her] race . . . [or] sex." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). While she did allege that the Highway Administration failed to hire her, she did not allege facts sufficient to claim that the reason it failed to hire her was <u>because of</u> her race or sex. To be sure, she repeatedly alleged that the Highway Administration did not select her because of the relevant decisionmakers' bias against African American women. But those "naked" allegations -- a "formulaic recitation" of the necessary elements -- "are no more than conclusions" and therefore do not suffice. <u>Iqbal</u>, 556 U.S. at 678-79 (quoting <u>Twombly</u>, 550 U.S.

8

at 555, 557) (internal quotation marks omitted).  For example, she alleged that "[d]uring the course of her interview, and based upon the history of hires within [the Office of Environmental Design], . . . both Keenan and Sangahvi predetermined to select for both positions a White male or female candidate."  But she alleged no factual basis for what happened "during the course of her interview" to support the alleged conclusion.  The allegation that the Highway Administration did not hire her because its decisonmakers were biased is simply too conclusory.  Only speculation can fill the gaps in her complaint -- speculation as to why two "non-Black candidates" were selected to fill the positions instead of her.  While the allegation that non-Black decisionmakers hired non-Black applicants instead of the plaintiff is <u>consistent</u> with discrimination, it does not alone support a <u>reasonable inference</u> that the decisionmakers were motivated by bias.  See <u>id.</u> at 678.  McCleary-Evans can only speculate that the persons hired were not better qualified, or did not perform better during their interviews, or were not better suited based on experience and personality for the positions.  In short, McCleary-Evans' complaint "stop[ped] short of the line between possibility and plausibility of entitlement to relief."  <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557) (internal quotation marks omitted).

In his dissent, Judge Wynn asserts that our holding "ignores the factual underpinnings" of Swierkiewicz, post, at 19, which approved an employment discrimination complaint that, he claims, contained allegations less detailed than those made by McCleary-Evans in this case, post, at 23. A closer look at Swierkiewicz, however, reveals that it does not support this position. Swierkiewicz claimed that he had been subject to discrimination based on his age and national origin, alleging that he had been employed by a reinsurance company that was "principally owned and controlled by a French parent corporation" for about six years as the chief underwriting officer when the company's CEO demoted him and "transferred the bulk of his underwriting responsibilities" to an employee who, like the CEO, was a French national and who was also significantly younger than Swierkiewicz. Swierkiewicz, 534 U.S. at 508. He alleged further that, about a year later, the CEO "stated that he wanted to 'energize' the underwriting department" and appointed the younger French national to serve as the company's new chief underwriting officer. Id. Finally, Swierkiewicz alleged specifically that the new chief underwriting officer was "less experienced and less qualified" for the position because he "had only one year of underwriting experience at the time he was promoted," whereas Swierkiewicz "had 26 years of experience in the insurance industry." Id. As

10

this last detail is precisely the kind of allegation that is missing from McCleary-Evans' complaint, the fact that the Supreme Court found Swierkiewicz's allegations sufficient to state a claim ultimately says little about the sufficiency of McCleary-Evans' complaint.

Moreover, in finding the complaint sufficient, the Supreme Court in Swierkiewicz applied a different pleading standard than that which it now requires under Iqbal and Twombly. See Robertson v. Sea Pines Real Estate Cos., 679 F.3d 278, 288 (4th Cir. 2012) (noting that Iqbal and Twombly "require more specificity from complaints in federal civil cases than was heretofore the case"). To be sure, those cases did not overrule Swierkiewicz's holding that a plaintiff need not plead the evidentiary standard for proving a Title VII claim -- indeed, Twombly expressly reaffirmed Swierkiewicz's holding that the "'use of a heightened pleading standard for Title VII cases was contrary to the Federal Rules' structure of liberal pleading requirements.'" Twombly, 550 U.S. at 570 (quoting Twombly v. Bell Atl. Corp., 313 F. Supp. 2d 174, 181 (S.D.N.Y. 2003)); see, e.g., Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 54 (1st Cir. 2013) (joining "[s]everal other courts of appeals" in concluding "that the Swierkiewicz Court's treatment of the prima facie case in the pleading context remains" good law). But Twombly and Iqbal did alter the criteria for assessing the

11

sufficiency of a complaint in at least two respects. First, the Twombly Court explicitly overruled the earlier standard articulated in Conley v. Gibson, 355 U.S. 41 (1957) -- and repeated in Swierkiewicz, see 534 U.S. at 514 -- that "'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Twombly, 550 U.S. at 561 (quoting Conley, 355 U.S. at 45-46); see also Iqbal, 556 U.S. at 670 (acknowledging that Twombly "retired the Conley no-set-of-facts test"); Francis v. Giacomelli, 588 F.3d 186, 192 n.1 (4th Cir. 2009) (same). Moreover, Iqbal and Twombly articulated a new requirement that a complaint must allege a plausible claim for relief, thus rejecting a standard that would allow a complaint to "survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." Twombly, 550 U.S. at 561 (alteration in original) (emphasis added).

In short, in addition to the fact that the Swierkiewicz complaint contained more relevant factual allegations for stating a Title VII claim than does McCleary-Evans' complaint, the Swierkiewicz Court also applied a pleading standard more relaxed than the plausible-claim standard required by Iqbal and Twombly. At bottom, therefore, the Supreme Court has, with

12

*Iqbal* and *Twombly*, rejected the sufficiency of complaints that merely allege the possibility of entitlement to relief, requiring plausibility for obtaining such relief and thus rejecting a complaint in which the plaintiff relies on speculation. See *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief <u>above the speculative</u> <u>level</u>" (emphasis added)).

Thus, contrary to Judge Wynn's assertions about the applicability of *Swierkiewicz*, it is clear that that decision does not control the outcome here because: (1) the complaint in *Swierkiewicz* alleged that the plaintiff was <u>more qualified</u> than the younger French person appointed to replace him -- an allegation that McCleary-Evans has not made; and (2) *Swierkiewicz* in any event applied a more lenient pleading standard than the plausible-claim standard now required by *Twombly* and *Iqubal*.

Applying the *Twombly/Iqbal* standard here reveals that McClearly-Evans' complaint suffers from the same deficiencies that defeated the complaint in *Iqbal*. In *Iqbal*, the plaintiff, a Muslim citizen of Pakistan who was detained after 9/11, alleged in a conclusory fashion that he was treated harshly pursuant to a policy adopted by the Attorney General and the Director of the FBI solely on account of his race, religion, or national origin. See 556 U.S. at 680-81. The Supreme Court

13

found the complaint insufficient because it had "not 'nudged [his] claims' of invidious discrimination 'across the line from conceivable to plausible,'" id. at 680 (alteration in original) (quoting Twombly, 550 U.S. at 570), explaining that his factual allegations did not "plausibly suggest" that the Attorney General and the FBI Director had acted with a "discriminatory state of mind," id. at 683.

Similarly, McCleary-Evans' complaint leaves open to speculation the cause for the defendant's decision to select someone other than her, and the cause that she asks us to infer (i.e., invidious discrimination) is not plausible in light of the "'obvious alternative explanation'" that the decisionmakers simply judged those hired to be more qualified and better suited for the positions. Iqbal, 556 U.S. at 682 (quoting Twombly, 550 U.S. at 567). Indeed, the consequence of allowing McCleary-Evans' claim to proceed on her complaint as stated would be that any qualified member of a protected class who alleges nothing more than that she was denied a position or promotion in favor of someone outside her protected class would be able to survive a Rule 12(b)(6) motion. Such a result cannot be squared with the Supreme Court's command that a complaint must allege "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678.

In sum, while the district court improperly applied the McDonnell Douglas evidentiary standard in analyzing the sufficiency of McCleary-Evans' complaint, contrary to Swierkiewicz, the court nonetheless reached the correct conclusion under Twombly and Iqbal because the complaint failed to state a plausible claim for relief, as required by Federal Rule of Civil Procedure 8(a)(2). Accordingly, we affirm.

AFFIRMED

Wynn, Circuit Judge, dissenting in part.

I do not agree with that part of the majority's opinion that affirms the dismissal of Dawnn McCleary-Evans's claim that she was discriminated against because of her race. This case brings into stark relief the tension embedded in the Supreme Court's recent jurisprudence regarding Rule 8 pleading requirements. It requires us to reconcile the Supreme Court's decisions in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), with its decision in Swierkiewicz v. Sorema N. A., 534 U.S. 506 (2002)—no small task as the inconsistent case law in this area shows.

The Supreme Court's decisions in Twombly and Iqbal, which underpin the majority's holding, each speak to the proper application of Rule 8(a)(2) of the Federal Rules of Civil Procedure. That rule continues to be the yardstick by which courts measure the sufficiency of civil complaints. The language of the rule thus makes for a good starting point for any court's consideration of a motion to dismiss for failure to state a claim. The rule provides:

> (a) Claim for Relief. A pleading that states a claim for relief must contain:
>
> > (2) a short and plain statement of the claim showing that the pleader is entitled to relief . . . .

Fed. R. Civ. P. 8(a)(2).

16

Time and again the Supreme Court has reiterated that Rule 8(a)(2) sets forth a "liberal pleading standard[]," one which does not contemplate the pleading of "specific facts." Erickson v. Pardus, 551 U.S. 89, 94 (2007). And the Supreme Court's recent jurisprudence has not extinguished what has been the guiding star of 12(b)(6) jurisprudence for the last forty years— "fair notice to the defendant." Id. at 93 (internal quotation marks and citations omitted). Indeed, the Court stated in Twombly and reiterated less than a year later in Erickson that the short and plain statement required under Rule 8(a)(2) "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (quoting Twombly, 550 U.S. at 555). Nor has the Court abandoned the longstanding requirement that judges "accept as true all of the factual allegations contained in the complaint." Id. at 04.

What the Court's recent cases <u>have</u> done, however, is require that a plaintiff do more than raise a remote possibility of relief. The now familiar moniker for the plaintiff's burden is "plausibility." While the Court's delineation of the plausibility requirement may be somewhat "opaque," Swanson v. Citibank, N.A., 614 F.3d 400, 411 (7th Cir. 2010) (Posner, dissenting), the Court has given lower courts a few signposts to travel by. We know, for instance, that more is required than "a sheer possibility that a defendant has acted unlawfully."

17

*Iqbal*, 556 U.S. at 678. A plaintiff must allege sufficient factual content to "'nudg[e]' his claim of purposeful discrimination 'across the line from conceivable to plausible.'" *Id*. at 683 (quoting *Twombly*, 550 U.S. at 570).

Yet we also know that "[t]he plausibility standard is not akin to a 'probability requirement.'" *Id.* at 678. In other words, it need not appear from the complaint that the plaintiff's claims are likely to succeed. As this Court recently recognized, "[a]lthough . . . the factual allegations in a complaint must make entitlement to relief plausible and not merely possible, what Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations." *McLean v. United States*, 566 F.3d 391, 399 (4th Cir. 2009) (internal quotation marks, alterations and citations omitted). Further, plausibility will not look the same in every case; assessing plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In evaluating the allegations in McCleary-Evans's complaint, however, we are not limited to the sparse guidance to be gleaned from *Twombly* and *Iqbal*. In 2002 the Supreme Court decided *Swierkiewicz*, a case involving the sufficiency of a wrongful termination claim under Title VII. 534 U.S. 506. In a <u>unanimous</u> opinion authored by Justice Thomas, the Court held

18

that "a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of discrimination under the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Id. at 508. To the contrary, the plaintiff "easily satisfie[d]" Rule 8(a)(2) when he "detailed the events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination." Id. at 514 (emphasis added). The Court held that such allegations "give respondent fair notice of what petitioner's claims are and the grounds upon which they rest." Id. Five years later, the Court told us that Swierkiewicz remains good law, specifically referencing the factual allegations that the Swierkiewcz Court deemed sufficient to state "grounds showing entitlement to relief." Twombly, 550 U.S. at 569-70.

While the majority pays lip service to Swierkiewicz, acknowledging that a plaintiff need not plead a prima facie case of discrimination under the McDonnell Douglas framework to comply with Rule 8(a)(2), see supra at 5-6, it entirely ignores the factual underpinnings of the Swierkiewicz holding, looking solely to the Supreme Court's 2009 decision in Iqbal to guide its decision. In Iqbal, a Pakistani man who had been detained during the weeks following the September 11th attacks alleged

19

that United States Attorney General John Ashcroft and Federal Bureau of Investigations Director Robert Mueller had "adopted an unconstitutional policy that subjected [him] to harsh conditions of confinement on account of his race, religion, or national origin." Id. at 666. In a five-four decision, the Court held that Iqbal's claims against Ashcroft and Mueller did not satisfy federal pleading requirements. While acknowledging that Rule 9 of the Federal Rules of Civil Procedure "excuses a party from pleading discriminatory intent under an elevated pleading standard," id. at 686, the Court held that Iqbal's bare assertions of Ashcroft and Mueller's discriminatory purpose were not entitled to the assumption of truth and that the remainder of his complaint failed to state a plausible claim. Id. at 697.

The apparent tension between the Court's decisions in Iqbal and Swierkiewicz is well-documented.[1] Despite this tension, however, "we have no authority to overrule a Supreme Court decision no matter . . . how out of touch with the Supreme

---

[1] See, e.g., McCauley v. City of Chicago, 671 F.3d 611, 623 (7th Cir. 2011) (Hamilton, dissenting) ("Iqbal . . . created tension with Swierkiewicz by endorsing its holding while simultaneously appearing to require the same sort of fact-specific pleading of discriminatory intent that the Swierkiewicz Court rejected."); Starr v. Baca, 652 F.3d 1202, 1215 (9th Cir. 2011) ("The juxtaposition of Swierkiewicz . . . on the one hand, and . . . Iqbal, on the other, is perplexing"); Arthur R. Miller, From Conley to Twombly to Iqbal: A Double Play on the Federal Rules of Civil Procedure, 60 Duke L.J. 1, 31 (2010) (noting that the tension between Iqbal and Swierkiewicz has "caus[ed] confusion and disarray among judges and lawyers").

Court's current thinking the decision seems." Scheiber v. Dolby Labs., Inc., 293 F.3d 1014, 1018 (7th Cir. 2002) (Posner, J.). See also Columbia Union College v. Clarke, 159 F.3d 151, 158 (4th Cir. 1998) (recognizing that "lower courts are not to conclude that the Court's more recent cases have, by implication, overruled its earlier precedent" (alterations and internal quotation marks omitted)). This is particularly true where, as here, the Supreme Court has said loud and clear that its prior decision has not been overruled.

We are therefore confronted with two Supreme Court cases having apparent relevance to the case before us. One of these cases, Swierkiewicz, involves a Title VII plaintiff who alleged that his employer wrongfully terminated him due to his national origin. The other, Iqbal, involves a suspected terrorist who alleged that he was mistreated pursuant to an unconstitutional policy instituted by the United States Attorney General in conjunction with the Director of the Federal Bureau of Investigations. I have little difficulty deciding which case has greater applicability to the run-of-the-mill employment discrimination case before us.[2]

---

[2] Further, I agree with Judge Hamilton's view that "we must take care not to expand Iqbal too aggressively beyond its highly unusual context—allegations aimed at the nation's highest-ranking law enforcement officials based on their response to unprecedented terrorist attacks on the United States homeland—to

21

The Seventh Circuit adopts the view that Swierkiewicz should continue to guide courts' application of federal pleading requirements in straightforward discrimination cases. In Swanson v. Citibank, N.A., the plaintiff alleged that Citibank denied her loan application because she was African-American in violation of the Fair Housing Act. 614 F.3d at 402-03. The court concluded that the complaint satisfied the Twombly/Iqbal plausibility standard where the plaintiff identified "the type of discrimination that she thinks occur[ed] (racial), by whom (Citibank, through Skertich, the manager, and the outside appraisers it used), and when (in connection with her effort in early 2009 to obtain a home-equity loan)." Id. at 617. The court held that the plausibility standard must be viewed through the lens of Swierkiewicz in most straightforward discrimination cases. Id. at 404. In reaching this holding, the court offered the following illustration:

> A plaintiff who believes that she has been passed over for a promotion because of her sex will be able to plead that she was employed by Company X, that a promotion was offered, that she applied and was qualified for it, and that the job went to someone else. That is an entirely plausible scenario, whether or not it describes what "really" went on in this plaintiff's case.

cut off potentially viable claims." McCauley v. City of Chicago, 671 F.3d 611, 628-29 (7th Cir. 2011) (Hamilton, J., dissenting).

22

Id. at 404-405 (emphasis added). Even Judge Posner, who dissented in Swanson, acknowledged that Swierkiewicz—though distinguishable in his view—remains good law, recognizing that "lower-court judges are not to deem a Supreme Court decision overruled even if it is plainly inconsistent with a subsequent decision." Id. at 410.

Turning to McCleary-Evans's complaint, it is clear that her allegations go beyond what Swierkiewicz (and well-beyond what Swanson) found sufficient to satisfy Rule 8(a)(2). McCleary-Evans contends that she applied for two positions with the Maryland Department of Transportation's State Highway Administration. She lays out in immense detail her qualifications for these positions. She identifies the Highway Administration employees responsible for denying her applications, and states that both were non-African American. She alleges that she and other African Americans who applied for positions with the Highway Administration were denied employment in favor of non-African American applicants. Finally, she alleges that based on her interview experience and what she apparently perceived as a discriminatory history of hires within the Highway Administration, her race played a role in the decision to hire non-African-American candidates over her. In this particular context, drawing on "judicial experience and

23

common sense," Iqbal, 556 U.S. at 679, McCleary-Evans's claim of race discrimination is eminently plausible.

I am not unmindful of the policy concerns that underlie the Supreme Court's decisions in Twombly and Iqbal. As Judge Posner pointed out in his Swanson dissent, the Court quite clearly aimed to curb the rising costs of discovery born by defendants facing meritless lawsuits and to quell the tide of "extortionate litigation" in this country. Swanson, 614 F.3d at 411 (Posner, dissenting) (citing Frank H. Easterbrook, "Discovery as Abuse," 69 B.U. L. Rev. 635, 639 (1989)). Indeed, the Twombly/Iqbal standard incentivizes plaintiffs to be more diligent in their pre-litigation investigations, thereby bringing greater balance to the asymmetric discovery burdens that may arise in litigation.

Yet if we are to consider litigation costs in the application of federal pleading standards, we must take care not to ignore the costs borne by plaintiffs and society as a whole when meritorious discrimination lawsuits are prematurely dismissed. See Miller, supra at 61. We ought not forget that asymmetric discovery burdens are often the byproduct of asymmetric information. The district court's decision below exemplifies the risks posed by an overly broad reading of Twombly and Iqbal. The district court faulted McCleary-Evans for failing to allege how much control the Highway

24

Administration employees named in the complaint "wield[ed]" over other members of the hiring committee and failing to identify the qualifications of the selected candidates. J.A. 27-28. It is simply unrealistic to expect McCleary-Evans to allege such facts without the benefit of at least some limited discovery. When we impose unrealistic expectations on plaintiffs at the pleading stage of a lawsuit, we fail to apply our "judicial experience and common sense" to the highly "context-specific task" of deciding whether to permit a lawsuit to proceed to discovery. Iqbal, 556 U.S. at 679. At the early stages of Title VII litigation, borderline conclusory allegations may be all that is available to even the most diligent of plaintiffs. The requisite proof of the defendant's discriminatory intent is often in the exclusive control of the defendant, behind doors slammed shut by an unlawful termination.[3]

Finally, I must take issue with the majority's suggestion that by "retiring" the Conley v. Gibson, 355 U.S. 41 (1957), "no set of facts" standard in Twombly, 550 U.S. at 563, the Supreme Court all but retired Swierkiewicz. Under the majority's view, what remains of Swierkiewicz after Twombly is the bare holding

---

[3] This state of affairs has led some commentators to argue for a broadened use of pre-dismissal discovery, a tool that is within the discretion of district courts. See, e.g., Suzette M. Malveaux, Front Loading and Heavy Lifting: How Pre-Dismissal Discovery Can Address the Detrimental Effect of Iqbal on Civil Rights Cases, 14 Lewis & Clark L. Rev. 65 (2010)).

that courts should not use the magic words of McDonnell Douglas to assess the sufficiency of Title VII claims at the 12(b)(6) stage. Thus, the majority would render Swierkiewicz a hollow shell and mute its primary thrust – namely, that discriminatory intent need not be pled with specific facts.[4] But the Supreme Court in Swierkiewicz specifically forbade using judicial interpretation to limit the scope of its holding. Indeed, in Swierkiewicz, in response to the argument that the Court's holding would "burden the courts" by "allowing lawsuits based on conclusory allegations of discrimination to go forward," Swierkiewicz, 534 U.S. at 514, Justice Thomas, writing for a unanimous Court, stated that "[a] requirement of greater specificity for particular claims is a result that 'must be obtained by the process of amending the Federal Rules, and not by judicial interpretation.'" Id. (emphasis added) (quoting Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168–169 (1993)). As far as I

---

[4] Indeed, in affirming dismissal of Swierkiewicz's national origin discrimination claim, the Second Circuit stated, "the only circumstances Swierkiewicz pled are that he is Hungarian, others at Sorema are French, and the conclusory allegation that his termination was motivated by national origin discrimination. . . . .[T]hese allegations are insufficient as a matter of law to raise an inference of discrimination." Swierkiewicz v. Sorema, N.A., 5 F. App'x 63, 64 (2d Cir. 2001) rev'd, 534 U.S. 506. That a unanimous Supreme Court explicitly rejected the Second Circuit's demand for greater specificity cannot be ignored.

am aware, no amendment to the Federal Rules has taken effect since the Court's ruling in <u>Swierkiewicz</u> that would require the level of specificity that the majority by its own "judicial interpretation" demands from McCleary-Evans.

Because McCleary-Evans's complaint states a plausible claim of discrimination on the basis of race, I respectfully dissent.