In the

# United States Court of Appeals
## For the Seventh Circuit

No. 24-1532

MANAL FARHAN,

*Plaintiff-Appellant,*

*v.*

2715 NMA LLC and M. FISHMAN & COMPANY,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:24-cv-00168 — **Robert W. Gettleman,** *Judge.*

ARGUED OCTOBER 22, 2024 — DECIDED DECEMBER 4, 2025

Before BRENNAN, *Chief Judge,* JACKSON-AKIWUMI, and
KOLAR, *Circuit Judges.*

KOLAR, *Circuit Judge.* Manal Farhan is a Palestinian American who flew a Palestinian flag in her apartment window. Defendants, the owner and operator of her apartment building, told her to take the flag down pursuant to a policy that the building would stay "neutral" amidst the Israel-Palestine conflict. Farhan refused and defendants terminated her tenancy. She then sued under the Fair Housing Act ("FHA") and

several state laws, alleging discrimination based on national origin. Finding no plausible discrimination, the district court granted defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

We note at the outset that we decide this case on narrow grounds, limited to the arguments presented by Farhan below and on appeal. In opposing defendants' motion to dismiss, Farhan pursued a novel and unsupported theory of liability under the FHA: that defendants' application of a "neutrality" policy requiring her, a Palestinian American, to remove a Palestinian flag was national origin discrimination prohibited by the FHA. She further asserted, erroneously, that a showing of discriminatory intent was not required at the pleading stage for her intentional discrimination claims, contrary to precedent. *See Texas Dep't of Hous. and Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 524 (2015). While we stress that the allegations in Farhan's complaint could perhaps, presented or defended differently, state a claim for discrimination under the FHA, we affirm the district court's dismissal.

## I. Background

At the pleading stage, we take all well-pled allegations in the complaint as true. *Kahn v. Walmart Inc.*, 107 F.4th 585, 593 (7th Cir. 2024). In 2021, Manal Farhan began leasing an apartment from defendants. Farhan is a first-generation Palestinian American. In October 2023, she handmade a Palestinian flag and displayed it outside her window to show solidarity with the Palestinian people. The flag, affixed to a small flagpole inside her unit, hung out of her window. Defendants accepted Farhan's November rent knowing that she had hung the flag outside of her window.

In early November 2023, the building's property manager called Farhan and told her that the building had received a complaint about the flag. The property manager explained that "because there is a conflict [in Gaza], we want to stay neutral." According to this purported "neutrality" policy, tenants were also required to remain neutral in the conflict and Farhan was instructed to remove her flag. Farhan then informed the property manager that she was Palestinian and that she was flying the flag to "express love and pride in her heritage." But the property manager stated that was "unacceptable" and if Farhan refused to remain neutral, she would be evicted.

Farhan did not remove the flag and, nine days later, received a ten-day notice of termination of her tenancy. The notice stated that she had violated a provision of her lease in how she displayed her flag (by partially hanging it outside her window). But Farhan claims this reason was pretextual, as the property manager had previously told Farhan that she would not be permitted to fly the flag even if it was completely inside her window.

Farhan asserts that other tenants in the building displayed flags and artwork in their windows in the same or a substantially similar manner as the Palestinian flag in Farhan's window. And on information and belief, none of those tenants received notices of termination. She does not, however, claim that other tenants were able to display flags or symbols relating to the Israel-Palestine conflict.

Farhan filed this case in Cook County Circuit Court in December 2023, alleging that defendants violated the FHA, the Illinois Consumer Fraud and Deceptive Business Practices Act, and the Chicago Residential Landlord and Tenant

Ordinance. She sought money damages, injunctive relief, and a declaration that defendants waived any alleged breach of the lease by accepting Farhan's rent. Defendants removed the case to federal court. They answered one of the state law claims, filed a counterclaim for eviction against Farhan, and moved to dismiss the remainder of Farhan's claims for failure to state a claim.

In opposing defendants' motion, Farhan pursued a theory that "requiring tenants to stay neutral in a conflict concerning their home countries is national origin discrimination." She argued that because defendants' "neutrality" policy related only to the Israel-Palestine conflict, and did not ban, for example, Ukrainian or Russian flags in tenant windows, "this would not be happening if she flew a Ukrainian flag in her window instead of a Palestinian one." She analogized her claim to that of the plaintiffs in *Bloch v. Frischholz*, 587 F.3d 771 (7th Cir. 2009) (*en banc*). In *Bloch*, Jewish plaintiffs sued after their condominium association applied a policy prohibiting "objects of any sort … outside Unit entrance doors" to repeatedly remove the Blochs' mezuzot from their external doorposts. *Id.* at 773. There, we held that the plaintiffs' claims of intentional discrimination could survive summary judgment because the association's selective application of its rules "transformed it from a neutral one to one that was targeted exclusively at observant Jewish residents." *Id.* at 783. Farhan argued the same was true here—that the defendants' policy of neutrality on the Israel-Palestine conflict was being "interpreted in a manner that constitutes intentional discrimination." But she maintained that no specific allegation of discriminatory intent was required to pursue a disparate treatment claim under *Bloch*.

Farhan also argued that she had adequately stated a claim for relief under a disparate impact theory, because defendants' "neutrality" policy "has a disproportionate impact on Palestinian tenants *by definition*." She argued that under defendants' policy other tenants could hang the flag of their homeland, but she, a Palestinian American, could not. Thus, even if defendants' discrimination was based upon political viewpoint, the fact that their policy disproportionately affected Palestinian and Israeli tenants meant that she had articulated an FHA disparate impact claim.

The district court granted defendants' motion to dismiss, holding that Farhan's complaint did not plausibly allege that she "was discriminated against based on her national origin, rather than her political beliefs in support of the Palestinian cause." The court noted that Farhan did not allege any facts about the national origins of other tenants who were allowed to display flags and artwork in their windows. It rejected the proposition that holding or displaying a flag is necessarily emblematic of a person's national origin such that banning the flag is discrimination based on national origin. And since Farhan alleged that she told defendants she was Palestinian American only after the property manager told her to take the flag down, there was no reasonable inference that defendants were aware of her national origin prior to enforcing the policy.

The district court also held that Farhan had not stated a claim for relief under § 3617 of the FHA because she had not alleged even one action based on discriminatory animus, let alone a "pattern of harassment motivated by discriminatory intent." The district court dismissed Farhan's FHA claims with prejudice and declined to exercise supplemental

jurisdiction over Farhan's state law claims, dismissing those claims without prejudice and entering judgment. Farhan then filed this appeal.

## II. Discussion

The Fair Housing Act prohibits discrimination in the provision and maintenance of housing. Section 3604(a) of the FHA prohibits refusing to sell, rent, or "otherwise make unavailable or deny" a dwelling based on race, color, religion, sex, familial status, or national origin. 42 U.S.C. § 3604(a). Section 3604(b) makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of" a protected status. 42 U.S.C. § 3604(b). Section 3604's protections apply even after an individual has purchased a home or rented an apartment. *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 861 (7th Cir. 2018). And in *Bloch*, we held that where a unit occupant submits to the rules or regulations of a private entity as a "condition" of their lease, "§ 3604(b) prohibits [that entity] from discriminating against [the occupant] through its enforcement of the rules, even facially neutral rules." 587 F.3d at 780.

A plaintiff may prove discrimination under § 3604 in two ways: disparate treatment (intentional discrimination) or disparate impact. *Id*. at 784. The former requires a showing of discriminatory intent—that the defendant took the action *because of* the plaintiff's protected status. *Id*. at 783 ("Discriminatory intent is the pivotal element in this case."). Under a disparate impact theory, however, a plaintiff may bring a claim under the FHA based on a decision or policy that has a discriminatory effect and no legitimate business or public

interest justification, even if there is no evidence the defendant intended to discriminate. *See Inclusive Communities*, 576 U.S. at 539–41; *see also Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 558 F.2d 1283, 1290 (7th Cir. 1977), *on remand from* 429 U.S. 252 (1977).

Homeowners and renters also have post-acquisition protections under § 3617 of the FHA, which makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any person in the exercise or enjoyment of" their fair housing rights. 42 U.S.C. § 3617; *Bloch*, 587 F.3d at 781–82.

A § 3617 discrimination claim requires a plaintiff to show that: (1) she is a protected individual under the FHA; (2) she was engaged in the exercise or enjoyment of her fair housing rights; (3) the defendants coerced, threatened, intimidated, or interfered with the plaintiff on account of her protected activity under the FHA; and (4) the defendants were motivated by an intent to discriminate. *Watters v. Homeowners' Ass'n at Preserve at Bridgewater*, 48 F.4th 779, 786 (7th Cir. 2022) (citing *Bloch*, 587 F.3d at 783). The coercion, intimidation, or interference prohibited by § 3617 is more than just a one-time conflict; it is a "pattern of harassment, invidiously motivated" that affects the plaintiff's right to remain in or enjoy her dwelling. *Bloch*, 587 F.3d at 783 (citations omitted).[1]

---

[1] Farhan's complaint included a count under § 3617 that defendants *retaliated* against her for exercising her housing rights. Retaliation is a different type of claim under § 3617 that requires a showing "that: (1) she engaged in protected activity; (2) she suffered an adverse action; and (3) there was a causal connection between the two." *Wetzel*, 901 F.3d at 868. But the district court instead treated Farhan's § 3617 claim as only an

On appeal, Farhan maintains that her complaint stated a claim for discrimination under § 3604(b)—under *both* a disparate treatment and disparate impact theory—and under § 3617. We review the district court's dismissal under 12(b)(6) *de novo*. *Brockett*, 116 F.4th at 685.

### A. Disparate Treatment

Farhan argues that her complaint plausibly alleges that defendants, by enforcing their "neutrality" policy, intentionally discriminated against her based on national origin. She faults the district court for "failing to take all facts set forth in the complaint as true and all inferences in the light most favorable" to her.

But the district court properly observed that her complaint lacks any allegation relating to a discriminatory intent motivating defendants' "neutrality" policy. The complaint does not allege, for example, that the policy *only* applies to Palestinian flags, as opposed to Israeli flags or other expressive signage. It does not allege that other non-Palestinian tenants were able to fly Israeli or Palestinian flags, or that the policy was only enforced against Palestinian tenants. Indeed, the complaint strongly implies the opposite, stating that the policy was "that tenants of Defendants," with no qualification, "are required to remain neutral in the so-called 'Israeli-Palestinian conflict.'" And while the complaint alleges that "other

---

*interference* claim, which requires a showing of discriminatory intent. Farhan makes no argument now that the district court erred by applying an interference standard to her § 3617 claim and did not even mention "retaliation" in defending her complaint below. Any argument for liability based on retaliation is therefore waived. *Brockett v. Effingham County*, 116 F.4th 680, 685–86 (7th Cir. 2024).

tenants also publicly display flags and artwork in their windows" and "display Christmas or holiday decorations," Farhan makes no claim that such artwork and decorations plausibly related to the Israel-Palestine conflict and would come under the ambit of the "neutrality" policy.

Pointing out these deficiencies in Farhan's complaint is not "deciding issues of fact and construing inferences in favor of the *Defendants*," as Farhan suggests. At the pleading stage, Farhan bears the modest burden of stating "only enough facts to state a claim to relief that is plausible on its face." *Orr v. Shicker*, 147 F.4th 734, 740 (7th Cir. 2025) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "This means that the complaint must offer 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged[.]'" *Id*. at 740–41 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). And while we draw all inferences in favor of Farhan, *see Sabo v. Erickson*, 128 F.4th 836, 843 (7th Cir. 2025) (*en banc*), we cannot draw inferences from facts that are not alleged. Had Farhan alleged, for example, that a non-Palestinian tenant had flown a Palestinian or Israeli flag without defendants' intervention, we could perhaps infer a discriminatory intent in her favor. So too if she asserted that the purported "neutrality" policy only prohibited Palestinian flags in practice. But Farhan makes no allegations relating to the national origin of other tenants or the application (or non-application) of the "neutrality" policy to them. Simply put, Farhan has not alleged any facts from which we can infer defendants' intent in applying the "neutrality" policy.

Farhan's reliance on *Bloch* as a way around our pleading standard is unavailing. To be sure, Farhan is right to analogize her claim to the Blochs'; she is also challenging a conduct-

based rule that burdens a protected class. She is also right to note that *Bloch* was decided at summary judgment, and we cannot expect the same factual development in her claims as we observed in *Bloch*. But she errs by ignoring *Bloch*'s holding about what constitutes intentional discrimination under the FHA. In *Bloch*, we held that even where the association harshly burdened the Blochs' religious expression by reinterpreting their hallway rules to ban mezuzot, the Blochs could only proceed on a disparate treatment claim if they proved "that the Association reinterpreted the Rules with Jews in mind." 587 F.3d at 785. "[E]vidence of an adverse impact on observant Jews" was not enough; the Blochs needed to "show that the Association reinterpreted the Hallway Rules to apply to mezuzot 'because of' and not merely 'in spite of' the Blochs' religion." *Id*.

Applying *Bloch* to this case, Farhan must plausibly allege that defendants created the "neutrality" policy, or applied it against her, "'because of' and not merely 'in spite of'" her national origin. *Id*. The complaint makes no such allegation. Indeed, it makes no allegation that defendants were even *aware* of her national origin prior to the enforcement of the "neutrality" policy. Farhan alleges that she did not have the Palestinian flag in her window before October 2023, and the only alleged communication regarding her Palestinian heritage occurred *after* the building manager instructed her to remove the flag.[2]

---

[2] The dissent sees us as crafting a new pleading requirement with our discussion of *Bloch* since that case came to us on summary judgment. But Farhan herself relied on *Bloch* below. And, we have stressed that summary judgment cases inform the substantive legal standards we apply to a case, even at the pleading stage. *Adams v. City of Indianapolis*, 742 F.3d 720, 728

In holding that Farhan's claim for intentional discrimination is unsupported by her allegations and our FHA caselaw, we do not foreclose the possibility that the circumstances of her *eviction* could support a claim under the FHA if presented differently. While the complaint does not support that defendants knew her Palestinian heritage prior to enforcing the "neutrality" policy, they certainly knew she was Palestinian before evicting her. And the complaint alleges conflicting reasons given for her eviction—whether it was because she hung the flag in the first place or because the flag was outside her window. Had Farhan pursued a claim that defendants moved to evict her because she is Palestinian, this might be a different case. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010) (identifying who discriminated, the type of discrimination, and when it occurred is sufficient to state a claim for simple housing discrimination).

But that is not the claim Farhan pursued, or ever attempted to pursue, in opposing defendants' motion to dismiss; we cannot credit it now. *See County of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 818 (7th Cir. 2006) (advising that we "will not invent legal arguments for litigants"). Rather, Farhan alleged in her complaint, and has maintained in her briefs, that defendants "[i]ssu[ed] a notice of termination of Plaintiff's tenancy because she publicly displayed a flag of her heritage … [and] because she would not adhere to Defendants' 'neutrality' policy."

---

(7th Cir. 2014) ("But there's nothing wrong with relying on summary-judgment cases at the pleading stage to explain the substantive legal standards that apply to the case[.]").

The implications from Farhan's position are clear: she was punished for her political views and actions in support of the Palestinian cause. But the FHA's protections simply do not extend to discrimination based on political expression. *Cf.* 42 U.S.C. § 3604(b) (prohibiting "discriminat[ion] … because of race, color, religion, sex, familial status, or national origin").[3] That the political expression in question implicates Farhan's heritage does not, without more, automatically transform viewpoint discrimination into *intentional* national origin discrimination. Accepting Farhan's *own* reading of her complaint, her noncompliance with the neutrality policy—not her protected status—was the reason for her eviction.

The dissent reads the complaint differently, and understands Farhan to be claiming that "[d]efendants discriminated against her because of her Palestinian national origin by discriminatorily enforcing her lease's policy prohibiting hanging objects outside of windows." *Post* at 23. But we fail to see in Farhan's submissions, in our court or below, the position the dissent ascribes to her. For one, Farhan has not taken the

---

[3] The dissent cites to *Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the L. v. Martinez*, 561 U.S. 661 (2010) for the suggestion that viewpoint or political expression may be the basis of a discrimination claim if the viewpoint or conduct is "closely correlated" to identity. *Post* at 24. But that case involved a First Amendment challenge to a law school's nondiscrimination policy requiring Christian student groups to admit homosexual members—a context in which viewpoint discrimination *is* actionable. *See Christian Legal Society*, 561 U.S. at 668–69. In applying rational basis review to the policy, the Court noted only *in dicta* that "[o]ur decisions have declined to distinguish between status and conduct in th[e] context" of bans on homosexual conduct. *Id*. at 685 (citing *Lawrence v. Texas*, 539 U.S. 558, 575 (2003)). We do not read *Christian Legal Society* to shed much light on FHA discrimination claims.

position that defendants applied the lease policy in a discriminatory or uneven fashion towards Palestinians—she frames her claim around the "neutrality" policy alone. *See* Resp. to Mot. to Dismiss [16] at 3 (main argument header) ("Requiring Tenants to Stay Neutral In A Conflict Concerning Their Home Countries Is National Origin Discrimination."). While Farhan might have pursued a straightforward claim that defendants evicted her because she was Palestinian, she pleaded herself out of court by affirmatively alleging the reason for her eviction—"because she publicly displayed a flag of her heritage [and] would not adhere to Defendants' 'neutrality' policy"— was based on her conduct, not identity. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) ("A plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits.") (internal quotation omitted). Moreover, Farhan has consistently framed the issue as one of viewpoint discrimination by stressing the targeting of tenants who, regardless of national origin, chose to fly the Palestinian flag. Farhan's brief before the district court makes this clear, stating that "this would not be happening if she flew a Ukrainian flag in her window instead of a Palestinian one."

This highlights a central point of our disagreement with the dissent. The dissent frames this as an issue of pleading standards; we agree wholeheartedly that there are no heightened pleading standards for discrimination claims. *Post* at 19. But "even a complaint that passes muster under the liberal notice pleading requirements of Federal Rule of Civil Procedure 8(a)(2) can be subject to dismissal if a plaintiff does not provide argument in support of the legal adequacy of the complaint." *Brockett,* 116 F.4th at 685 (quoting *Lee v. N.E. Ill. Regional Commuter R.R. Corp.*, 912 F.3d 1049, 1053–54 (7th Cir.

2019)). We cannot ignore how Farhan doubled down on viewpoint discrimination in defending against the motion to dismiss. Lest our disagreement with the dissent cloud the issue for future litigants and district courts, we stress that Farhan may well have prevailed in the district court—or persuaded us the district court was in error—with a different presentation of the underlying facts. But Farhan maintained her viewpoint-based theory throughout this litigation, which our caselaw cannot sustain. And to the extent this goes to a disparate impact theory, Farhan's complaint falls short, as we now discuss.

## B.  Disparate Impact

In *Bloch*, we recognized that a plaintiff may bring a § 3604 discrimination claim without a showing of discriminatory intent under the "modified disparate impact theory" first articulated in our decision in *Arlington Heights*. *Bloch*, 587 F.3d at 784.[4] Under this analysis, we balance the disparate impact of a policy or action, along with any evidence of discriminatory intent, against the defendant's interest in the challenged policy or action, and the scope of relief sought by the plaintiff. *Arlington Heights*, 558 F.2d at 1290–93. The Supreme Court, in *Inclusive Communities*, confirmed that disparate impact theories are cognizable under the FHA. *See* 576 U.S. at 545. The Court did, however, instruct courts to "examine with care whether a plaintiff has made a prima facie showing of disparate impact," and clarified that housing policies "are not contrary to the disparate-impact requirement unless they are

---

[4] In *Bloch*, we found that the Blochs had waived their disparate impact theory by failing to develop it prior to summary judgment, and did not reach the merits of the claim. 587 F.3d at 784.

artificial, arbitrary, and unnecessary barriers." *Id*. at 521 (internal quotation marks omitted).

Of course, a plaintiff need not meet all the elements of a *prima facie* showing at the pleading stage. *See Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1338 (7th Cir. 2024). Nevertheless, *Inclusive Communities* tells us that for an FHA disparate impact claim a plaintiff must plead facts alleging a causal connection between a policy or action and a disparate impact on a protected class. *See Inclusive Communities*, 576 U.S. at 543 ("A plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact."). As we have said in the Title VII context,[5] "[d]isparate-impact plaintiffs are permitted to rely on a variety of statistical methods and comparisons to support their claims," and "[a]t the pleading stage, some basic allegations of this sort will suffice." *Adams*, 742 F.3d at 733.

But Farhan's complaint provides no such comparisons, and she devotes little effort to developing a disparate impact theory in her briefs before us. There is no allegation, for example, about how many tenants are or may be impacted by this rule—much less how many Palestinian tenants—or even if the policy has been enforced beyond just her case. And while Farhan states that other tenants keep flags, artwork,

---

[5] We have recognized that the FHA and Title VII are "functional equivalent[s]" and "are given like construction and application." *Kyles v. J.K. Guardian Sec. Servs., Inc.*, 222 F.3d 289, 295 (7th Cir. 2000); *see also Inclusive Communities*, 576 U.S. at 534–35 (concluding that disparate impact theories are available under § 3604 by reference to Title VII). *But see Wetzel*, 901 F.3d at 863 (holding employer-liability standard from Title VII inapplicable to landlord liability under FHA for hostile-environment claims).

and decorations in their windows, she makes no factual allegations about their national origins from which a comparison can be made. It is not enough that Farhan claims that the policy "negatively impacts Palestinians"—she must plead that the policy negatively impacts Palestinians *more* by proportion than non-Palestinians. *See Arlington Heights*, 558 F.2d at 1290–91 (determining discriminatory effect by looking at "adverse impact on a significantly greater percentage of the nonwhite people"). Without any indications of how many Palestinians are or may be affected by the policy, compared to non-Palestinians, the complaint provides no basis from which we can infer a disparate impact.

Farhan's only suggestion of a disparate impact is that, because defendants' "neutrality" policy applied only to the Israel-Palestinian conflict, Palestinian tenants "*by definition*" were not allowed to express national pride in the same way as other tenants. But this is a non-starter; to the extent that the policy can be said to facially impact Palestinians more than other groups—i.e. the policy is facially discriminatory—"disparate treatment is the proper theory for analyzing the facts of th[e] case, not disparate impact." *Reidt v. County of Trempealeau*, 975 F.2d 1336, 1340 (7th Cir. 1992). Disparate impact requires us to look beyond the text of the policy and to its actual effects, but Farhan alleges none that could support her claim.

Again, we do not hold that the kind of policy described in Farhan's complaint could *never* give rise to a disparate impact theory under the FHA. Given the specific arguments before us, however, Farhan has not claimed a plausible disparate impact theory under § 3604.

### C. Interference Under § 3617

Farhan's § 3617 claim fails for similar reasons. Interference under § 3617 requires a showing of "a pattern of harassment" that is "motivated by an intent to discriminate." *Watters*, 48 F.4th at 785, 787 (quoting *Bloch*, 587 F.3d at 783). Farhan has alleged no "pattern" here—she brings her action on the basis of one action enforcing defendants' "neutrality" policy. Nor, as discussed above, has she pled sufficient facts for us to infer that this action was motivated by an intent to discriminate.

### D. State Law Claims

Farhan makes one final argument—that the district court erred when it dismissed without prejudice her state law claims instead of remanding them to state court. A remand may better "promote the values of economy, convenience, fairness, and comity," but it is ultimately in the district court's discretion whether to dismiss without prejudice or remand to state court. *See Robles v. City of Fort Wayne*, 113 F.3d 732, 738 (7th Cir. 1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 352–53 (1988), *superseded by statute as recognized by Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 39–41 (2025)). And "[t]he usual practice in this circuit is for district courts to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Hagan v. Quinn*, 867 F.3d 816, 830 (7th Cir. 2017) (internal quotation marks omitted). Farhan provides no argument for why taking the usual course in this instance was an abuse of discretion; accordingly, we find none.

### III. Conclusion

We close where we started: stressing that we decide this case on narrow grounds, limited to the arguments Farhan

presented below and on appeal. We share the dissent's concern over any slide towards heightened pleading standards. We have previously reminded district courts that "[l]ists of things that plaintiffs need to prove concern *evidence* (at summary judgment and trial); they must not be treated as demands for longer and more detailed pleadings." *Thomas*, 120 F.4th at 1338. At the same time, district courts are to address the arguments the parties present. We will not lightly consider arguments a party failed to raise below, much less reverse judgments based upon such arguments. Here, we have a plaintiff who pressed an argument that viewpoint discrimination against all symbols relating to a conflict was national origin discrimination, full stop and without pursuing alternate theories of intent or impact. And before us, Farhan again relied primarily on that theory, which finds no support in our case law.

For the foregoing reasons, the district court's decision is AFFIRMED.

JACKSON-AKIWUMI, *Circuit Judge,* dissenting. There is no heightened pleading standard for discrimination claims. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511–12 (2002); *Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1337–38 (7th Cir. 2024). The routine pleading standard applicable to such cases requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "Specific facts are not necessary." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Plaintiffs need only plead facts showing that the claim is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Manal Farhan clears this low bar. She alleges facts that allow the plausible inference that the owner and operator of her apartment building ("Defendants") violated the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.,* by discriminating against her because of her Palestinian national origin. But in affirming the district court's dismissal of Farhan's complaint under Federal Rule of Civil Procedure 12(b)(6), the majority imposes additional pleading hurdles that our case law does not support and fails to draw all reasonable inferences in Farhan's favor. I respectfully dissent.

**I**

We explained how the pleading standard outlined above applies to FHA claims in *Swanson v. Citibank, N.A.*, 614 F.3d 400 (7th Cir. 2010). There, the district court had dismissed Swanson's claim that Citibank discriminated against her on the basis of race when the bank denied her application for a home loan. *Id.* at 402–03, 407. We reversed, explaining that to meet the plausibility standard required by Rule 8 of the Federal Rules of Civil Procedure, a "plaintiff must give enough details about the subject-matter of the case to present a story

that holds together." *Id.* at 404. Applied to the facts at issue, we found that Swanson's FHA claim met this standard: "Swanson's complaint identifies the type of discrimination that she thinks occurs (racial), by whom (Citibank … ), and when (in connection with her effort in early 2009 to obtain a home-equity loan). This is all that she needed to put in the complaint." *Id.* at 405.

Farhan's allegations clear the *Swanson* threshold. Her complaint identifies the "type of discrimination that she thinks occur[red]" (national origin); "by whom" (Defendants); "and when" (in connection with Defendants' eviction of her after she refused to remove a Palestinian flag from her window following the October 2023 escalation of conflict between Israel and Palestine). *Id.* Granted, the facts she pleads, even taken as true, do not *conclusively* show Defendants violated the FHA. But they don't need to. Her allegations, theory of the case, and the reasonable inferences therefrom make her claim of discrimination *plausible*. That's enough to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

## II

My colleagues see things differently. They conclude Farhan hasn't pleaded facts showing Defendants' neutrality policy regarding the Israeli–Palestinian conflict was created and applied to Farhan because of her national origin. The majority draws this test from *Bloch v. Frischholz*, where we held that a challenge to a homeowners' association policy that prohibited displaying objects outside of unit doors survived summary judgment. 587 F.3d 771, 785 (7th Cir. 2009) (en banc). Because a reasonable jury could conclude the association "reinterpreted" the preexisting policy "to apply to [plaintiffs] 'because of' and not merely 'in spite of'" their Jewish faith, we

found that plaintiffs presented triable issues of fact on their religious discrimination claim. *Id.*

But *Bloch* was a summary judgment case that announced the summary judgment burden for disparate-treatment FHA claims. Farhan's claim is only at the pleading stage, and therefore subject only to the plausibility standard outlined above. The majority acknowledges this difference in procedural posture, but nevertheless grafts the summary judgment standard from *Bloch* onto the standard for a motion to dismiss. Compounding its error, the majority also relies on the Supreme Court's decision in *Inclusive Communities Project* to state that Farhan "erroneously" asserted she did not need to show intent to plead an FHA claim. *Ante,* at 2 (citing *Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 524 (2015)). But that case, too, came to the Court after summary judgment and a bench trial. *See Inclusive Communities Project, Inc. v. Tex. Dep't of Hous. & Cmty. Affs.* 747 F.3d 275, 278–80 (5th Cir. 2014), *aff'd*, 576 U.S. 519. It is the majority, not Farhan, that "erroneously" applies *Bloch and Inclusive Communities* to fashion a new pleading standard*.*

Case after case tells us that is wrong. In *Thomas*, we reminded litigants that "[l]ists of things that plaintiffs need to prove concern *evidence* (at summary judgment and trial); they must not be treated as demands for longer and more detailed pleadings." 120 F.4th at 1338. Similarly, in *Carlson v. CSX Transportation, Inc.,* we held that the district court erred in dismissing a discrimination suit when it "relied on summary judgment decisions that address[] not the content of complaints but the evidence needed to take a claim to a jury." 758 F.3d 819, 827 (7th Cir. 2014). Thus, while I do not dispute that courts can consult summary judgment opinions for the

substantive legal standards that apply to a case, *see Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014), we may not treat a plaintiff's failure to plead or argue every element of her summary judgment burden of proof as a reason to dismiss a plausible claim.

Summary judgment and Rule 12(b)(6) motions to dismiss arise at very different stages of a case and serve very different purposes. The former asks whether a plaintiff has enough *evidence* to potentially satisfy her burden at trial; the latter asks only whether a claim is *plausible* enough that it's worth the time and expense of discovery. *Compare Celotex v. Catrett*, 477 U.S. 317, 322–23 (1986) (explaining when summary judgment is proper), *with Iqbal*, 556 U.S. at 678 (describing how a plaintiff can survive a motion to dismiss). The distinction is important, because plaintiffs rarely will know or even be able to guess the full story of what happened to them without discovery. *Swierkiewicz*, 534 U.S. at 512; *Carlson*, 758 F.3d at 830. Demanding that a plaintiff's pleadings track the summary judgment standard of proof, as the majority does here, prematurely closes the courtroom doors to plaintiffs with plausible claims for relief.

## III

The majority also faults Farhan for presenting her allegations in what it calls a "novel and unsupported" theory of the case. *Ante*, at 2. The majority concedes that "the circumstances of [Farhan's] *eviction* could support a claim under the FHA if presented differently." *Ante,* at 11. But the majority concludes it "cannot credit" that theory because Farhan did not argue it properly below. *Id.*

This, too, overextends the motion to dismiss inquiry. "We have made th[e] point repeatedly" that "[t]he Federal Rules of Civil Procedure do not require a plaintiff to plead legal theories." *Zall v. Standard Ins. Co.*, 58 F.4th 284, 295 (7th Cir. 2023). When reviewing a complaint on motion to dismiss, we ask only whether the allegations make out a plausible claim, not whether a plaintiff has chosen to pursue the right legal theory. Farhan may not have packaged her allegations in a way that satisfies the majority—in either her complaint or her briefs defending the motion to dismiss. But her failure to do so is not fatal at this stage of the case. *Cf. Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1023 (7th Cir. 2018) ("Even where a plaintiff initially asserts particular theories of recovery, unless the change unfairly harms the defendant she is allowed to switch course and pursue other avenues of relief as litigation progresses.").

Moreover, Farhan still states a claim even under the legal theory she did present to the district court: that Defendants discriminated against her because of her Palestinian national origin by discriminatorily enforcing her lease's policy prohibiting hanging objects outside of windows. The majority disposes with this theory by incorrectly asserting that Farhan needed to plead "facts from which we can infer defendants' intent." *Ante*, at 9. According to the majority, Farhan might have survived a motion to dismiss had she pleaded "that a non-Palestinian tenant had flown a Palestinian or Israeli flag without defendants' intervention" or that the neutrality policy "only prohibited Palestinian flags in practice." *Ante*, at 9. But imposing that burden on Farhan is inconsistent with our case law: a plaintiff need not plead "circumstances that support an inference of discrimination" to survive a motion to dismiss her discrimination claim. *See Swanson*, 614 F.3d at

404–05; *Carlson*, 758 F.3d at 830; *cf. Swierkiewicz*, 534 U.S. at 510–11.

The majority's assertion that Farhan alleged mere "viewpoint discrimination" based on her "conduct, not identity" also does not hold water. *Ante,* at 13. As the Supreme Court has explained in the First Amendment context—citing discrimination cases—conduct or viewpoint discrimination can support an inference of animus against a protected group where the targeted conduct or viewpoint is "closely correlated with" that group. *Christian Legal Soc'y v. Martinez*, 561 U.S. 661, 689 (2010) ("Our decisions have declined to distinguish between status and conduct in th[e] context [of discrimination]." (citing *Lawrence v. Texas*, 539 U.S. 558, 575 (2003))); *id.* (citing Justice O'Connor's concurrence in *Lawrence* for the "closely correlated with" language). So even if it were true that Farhan only alleged discrimination against a "viewpoint" declaring support for the Palestinian cause, that viewpoint is so "closely correlated with" her being Palestinian that it is plausible to infer—at least at the pleading stage—animus against Palestinians themselves. Held to our routine pleading standard, and with the benefit of all inferences in her favor, Farhan has alleged enough to survive a motion to dismiss.

## IV

Discounting the plausibility of Farhan's allegations and preferring its own theory of the case over Farhan's are not the majority's only missteps. The majority also weighs competing inferences at the motion to dismiss stage rather than granting all reasonable inferences in Farhan's favor. *Swanson* cautions against such balancing: "[I]t is not necessary to stack up inferences side by side and allow the case to go forward only if the plaintiff's inferences seem more compelling than the

opposing inferences." 614 F.3d at 404. The majority errs in this respect throughout; I highlight two particular instances.

First, the majority says that because Farhan's "only alleged communication [with Defendants] regarding her Palestinian heritage occurred *after* the building manager instructed her to remove the flag," Farhan hasn't pleaded that Defendants were aware of her Palestinian national origin before enforcing the neutrality policy. *Ante*, at 10–11. Putting aside the fact that Farhan does not need to allege that Defendants were aware of her national origin at this stage of the case, *see Swanson*, 614 F.3d at 415, the majority misconstrues Farhan's allegations. The complaint states that Farhan informed the property manager she was Palestinian *before* the manager gave her the final ultimatum to take down the flag. Then, Defendants evicted her after she refused to do so. These allegations allow the reasonable inference that Defendants knew of Farhan's identity before the actions that gave rise to Farhan's FHA claim, which included not only the initial takedown notice but also the subsequent ultimatum and eviction.

Moreover, the majority improperly grants an inference in favor of Defendants by assuming that they did not know Farhan was Palestinian because the *property manager* was personally unaware of Farhan's national origin. But even if the property manager did not personally know that Farhan was Palestinian, that does not foreclose the possibility that *Defendants* knew. And similarly, the fact that Farhan mentioned her identity during the conversation does not say anything about whether anyone—the property manager or Defendants—knew of her national origin before that conversation. Based on her pleadings, it is reasonable to infer that Farhan's

comment could have been a simple reminder. At this stage, we must grant these inferences in Farhan's favor.

Second, the majority faults Farhan for not putting forth "any allegation relating to a discriminatory intent motivating defendants' 'neutrality' policy." *Ante*, at 8. But Farhan's complaint rebuts that conclusion. Recounting her conversation with the property manager, Farhan alleges that after she "explained that she [wa]s Palestinian and flying the flag to 'express love and pride' in her heritage," the property manager "stated this was unacceptable." This allegation—viewed in the context of Farhan's additional allegations that the neutrality policy was pretextual in the first place—permits an inference that Defendants harbored prejudice against Palestinians. That inference makes it plausible that Defendants' enforcement of the policy was motivated in part by Farhan's Palestinian identity.

Of course, it's also plausible that the property manager simply meant that it was unacceptable for Farhan to violate the neutrality policy, no matter her identity. But a motion to dismiss is not the time to decide whose version of events to believe. *See Swanson*, 614 F.3d at 404.

*     *     *

The heightened pleading standard for FHA claims imposed by the majority hampers the ability of all people, regardless of race, color, religion, sex, familial status, or national origin, *see* 42 U.S.C. § 3604, to seek redress for FHA violations. I respectfully dissent.